STATE OF MINNESOTA

IN SUPREME COURT

A15-0076

Court of Appeals                                                    Gildea, C.J.
                                                 Took no part, Chutich, McKeig, JJ.

State of Minnesota,

                    Appellant,

vs.                                                        Filed:  October 12, 2016
                                                          Office of Appellate Courts

Ryan Mark Thompson,

                    Respondent.

_____


Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Julia A. Forbes, Assistant County Attorney, Thomas R. Ragatz, Special Assistant County Attorney, Owatonna, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Daniel J. Koewler, Charles A. Ramsay, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota, for respondent.

Lori Swanson, Attorney General, Alethea M. Huyser, Assistant Solicitor General, Michael Everson, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae Minnesota Attorney General.

Teresa Nelson, American Civil Liberties Union of Minnesota, Saint Paul, Minnesota; and

Bruce Jones, Peter M. Routhier, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for amicus curiae American Civil Liberties Union of Minnesota.

_____


1

1.    Under *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), the Fourth Amendment does not allow the State to prosecute respondent for violating Minn. Stat. § 169A.20, subd. 2 (2014), for refusing the blood test requested of him.

2.    Because the intrusion into respondent's privacy interests is greater than the government's need for a urine sample, a warrantless urine test does not fall within the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.

3.    Because the good-faith exception to the exclusionary rule is a rule of evidence and respondent does not challenge the admission of any evidence, the good-faith exception does not apply.

4.    Because respondent cannot be prosecuted under the Fourth Amendment for refusing to consent to an unconstitutional search, Minn. Stat. § 169A.20, subd. 2, which criminalizes an arrestee's refusal to take a warrantless blood or urine test, is unconstitutional as applied.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

The question presented in this case is whether Minn. Stat. § 169A.20, subd. 2 (2014) ("test refusal statute"), is constitutional as applied to respondent Ryan Mark Thompson. After Thompson was arrested on suspicion of driving while impaired and refused warrantless blood and urine tests, he was charged with and convicted of test refusal.

Thompson moved to dismiss the test refusal charge, arguing that the statute was unconstitutional, but the district court denied his motion. On appeal, the court of appeals reversed. *State v. Thompson*, 873 N.W.2d 873, 880 (Minn. App. 2015). Because we conclude that the test refusal statute is unconstitutional as applied to Thompson, we affirm.

Around 1:00 a.m. on April 13, 2012, an Owatonna police officer watched patrons as they left a bar in Owatonna at closing time. The officer saw a vehicle, which police later determined Thompson was driving, jump the curb and then stop quickly before reversing and leaving the parking lot. As the vehicle turned onto the street outside the bar, it cut the corner short and crossed the center line. The officer initiated a traffic stop.

When the officer approached the vehicle, Thompson provided the driver's license of a female passenger in the vehicle. Thompson informed the officer that he did not have his license with him, but the officer was eventually able to identify Thompson by his name and date of birth. The officer noticed "an overwhelming odor" of alcohol coming from the vehicle while he spoke with Thompson, and saw that Thompson had "watery and glassy eyes." Thompson maintained that he had consumed only one beer.

After Thompson failed standardized field sobriety tests and a preliminary breath test, the officer placed Thompson under arrest for driving while impaired, and transported him to the Steele County Detention Center. There, officers gave Thompson a telephone, a telephone book, and a directory of attorneys he could contact. Thompson left a voicemail with one attorney and told the officer that he had finished attempting to contact an attorney. After the officer read the Minnesota Implied Consent Advisory to Thompson, the officer

3

asked Thompson to submit to a blood or urine test. Thompson refused both tests, and when asked why, stated "[f]or the fact that I don't think I've been prosecuted properly."

The State subsequently charged Thompson with one count of second-degree test refusal, Minn. Stat. §§ 169A.20, subd. 2, 169A.25 (2014); one count of third-degree driving while impaired, Minn. Stat. §§ 169A.20, subd. 1(1), 169A.26 (2014); one count of obstruction of legal process, Minn. Stat. § 609.50, subds. 1(2), 2(3) (2014); and one count of driving over the centerline, Minn. Stat. § 169.18, subd. 1 (2014). Thompson moved for dismissal of the test refusal charge, arguing that the application of the test refusal statute to him violated his substantive due process rights and the doctrine of unconstitutional conditions. Relying on our decision in *State v. Bernard*, 859 N.W.2d 762 (2015), *aff'd sub nom. Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), the district court held that the statute was constitutional. Thompson then waived his right to a jury trial and other trial rights, and the parties agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, on the test refusal charge. The State dismissed the other charges. The district court found Thompson guilty of test refusal.

The court of appeals reversed Thompson's conviction, concluding that charging an individual with test refusal violates a fundamental right because a warrantless search of a driver's blood or urine does not qualify under an exception to the warrant requirement and the test refusal statute is not narrowly tailored to serve a compelling government interest. *Thompson*, 873 N.W.2d at 878, 880. We granted the State's petition for review.

On appeal, the State argues that the test refusal statute was constitutionally applied to Thompson because a warrantless search of his blood or urine would have been

4

constitutional as a search incident to a valid arrest.[1]  In the alternative, the State argues that even if a warrantless search violates the Fourth Amendment, we should nevertheless uphold Thompson's conviction under the good-faith exception to the exclusionary rule. We address each argument in turn.

I.

We turn first to the State's contention that the test refusal statute is constitutional as applied to Thompson.  Under the test refusal statute, "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)." Minn. Stat. § 169A.20, subd. 2.  Minnesota law also provides that "[a]ny person who drives . . . a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance" and authorizes law enforcement to request that a driver submit to a chemical test of their blood, breath, or urine in certain circumstances.  *See* Minn. Stat. § 169A.51, subd. 1 (2014).

The State contends that a warrantless search of an arrestee's urine, conducted after the suspected drunk driver is in police custody, is constitutional under the Fourth Amendment as a search incident to a valid arrest.  Because an arrestee has no right to refuse a constitutional search, the State argues, the test refusal statute is constitutional as applied

---

[1]    In its initial brief, the State, citing *Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 1969 (2013), also argued that we should uphold warrantless blood and urine tests under a general reasonableness analysis.  The State abandoned this argument following the Supreme Court's decision in *Birchfield*, ___ U.S. ___, 136 S. Ct. 2160.

to Thompson. For his part, Thompson maintains that a warrantless urine search does not qualify as a search incident to a valid arrest and that the test refusal statute unconstitutionally criminalizes the assertion of the right to be free from unreasonable searches. The constitutionality of a statute presents a question of law that we review de novo. *In re Welfare of M.L.M.*, 813 N.W.2d 26, 29 (Minn. 2012).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The "touchstone" of the Fourth Amendment is reasonableness. *United States v. Knights*, 534 U.S. 112, 118 (2001). When law enforcement seeks to conduct a search to uncover evidence of criminal wrongdoing, reasonableness typically requires law enforcement to obtain a judicial warrant before conducting the search. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989)); *see also Riley v. California*, ___U.S. ___, 134 S. Ct. 2473, 2482 (2014) ("Such a warrant ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (citation omitted) (internal quotation marks omitted)). Searches conducted without a warrant, "outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The exception at issue here is the search-incident-to-arrest exception. *See, e.g.*, *Riley*, ___ U.S. at ___, 134 S. Ct. at 2483-84 (discussing the search-incident-to-arrest exception).

6

While this case was pending before our court, the United States Supreme Court decided *Birchfield*, ___ U.S. ___, 136 S. Ct. 2160. In *Birchfield*, the Court considered the search-incident-to-arrest exception in analyzing the constitutionality of the application of North Dakota's and Minnesota's test refusal statutes to warrantless breath and blood tests.[2] Specifically, the Court considered how one of the "established and well-delineated" exceptions to the warrant requirement, a search performed incident to a valid arrest, applied to breath and blood tests of drivers arrested for drunk driving. ___ U.S. at ___, 136 S. Ct. at 2174-76, 2188. The Court noted that in *United States v. Robinson*, 414 U.S. 218, 235 (1973), it had previously "repudiated 'case-by-case adjudication' of the question whether an arresting officer had the authority to carry out a search of the arrestee's person" and reaffirmed that "[t]he permissibility of" a search incident to an arrest "does not depend on whether a search of a *particular* arrestee is likely to protect officer safety" or lead to the discovery of evidence that could be destroyed. *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2176. The Court reaffirmed "*Robinson*'s categorical rule" in *Riley*, ___ U.S. at ___, 134 S. Ct. at 2484, and further explained how the rule should be applied in "situations that could not have been envisioned when the Fourth Amendment was adopted." *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2176.

The Court in *Birchfield* applied the test used in *Riley* to determine whether breath and blood tests of suspected drunk drivers qualified as searches incident to a valid arrest,

---

[2]    In 2013, North Dakota adopted a law similar to Minnesota's test refusal statute that makes it a crime for a driver to refuse to submit to a test of their blood, breath, or urine to determine their alcohol concentration or the presence of other drugs. *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2170; *see also* N.D. Cent. Code § 39-08-01(1)–(3) (2016).

balancing " 'the degree to which [breath and blood tests] intrud[e] upon an individual's privacy and . . . the degree to which [breath and blood tests are] needed for the promotion of legitimate governmental interests.' " *Id.* at \_\_\_, 136 S. Ct. at 2176 (quoting *Riley*, \_\_\_ U.S. at \_\_\_, 134 S. Ct. at 2484). To assess the intrusion upon individual privacy, the Court considered three factors: (1) the extent of the physical intrusion upon the individual to obtain the evidence; (2) the extent to which the evidence extracted could be preserved and mined for additional, unrelated private information; and (3) the extent to which participation in the search would enhance the embarrassment of the arrest. *Id.* at \_\_\_, 136 S. Ct. at 2176-77. The Court then proceeded to balance these considerations against the government's "great" need for alcohol concentration testing. *Id.* at \_\_\_, 136 S. Ct. at 2178-84.

Applying this framework, the Court upheld our decision in *Bernard*, 859 N.W.2d 762, holding that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Birchfield*, \_\_\_ U.S. at \_\_\_, 136 S. Ct. at 2184. The court concluded that breath tests have only a "slight" impact on individual privacy. *Id.* at \_\_\_, 136 S. Ct. at 2184. A blood test, however, due to its "significantly more intrusive" nature, may not be "administered as a search incident to a lawful arrest for drunk driving" and requires a warrant absent the existence of exigent circumstances. *Id.* at \_\_\_, 136 S. Ct. at 2185.[3]

---

[3] The State does not argue that exigent circumstances are present in this case.

Thompson refused both a blood and a urine test. *Birchfield* is dispositive with respect to the blood test that Thompson refused. A warrantless blood test may not be administered as a search incident to a lawful arrest of a suspected drunk driver. *See also State v. Trahan*, No. A13-0931, slip op. at 13 (Minn. filed Oct. 12, 2016) (holding that test refusal statute was unconstitutional as applied to a driver prosecuted for refusing a warrantless blood test). The Court in *Birchfield* did not address whether warrantless urine tests were constitutional under the search-incident-to-arrest exception. But *Birchfield* presents the appropriate framework for us to analyze the constitutionality of Minnesota's test refusal statute as it applies to warrantless urine tests.[4]

---

[4] Thompson argued, and the court of appeals held, that the test refusal statute was unconstitutional as applied to Thompson using a substantive due process analysis. Specifically, the court of appeals held that charging an individual with test refusal implicates a fundamental right because a warrantless search of the driver's blood or urine would not have been constitutional under an exception to the warrant requirement, and that the test refusal statute is not narrowly tailored to serve a compelling government interest. *Thompson*, 873 N.W.2d at 879-80. In *Birchfield*, the Court did not examine whether criminalizing the refusal to submit to an unconstitutional search violated the Due Process Clause. Instead, the Court's conclusion that the warrantless blood test violated the Fourth Amendment was dispositive. ___ U.S. at ___, 136 S. Ct. at 2184. The Court has followed this method of analysis in other cases as well. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (" '[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))); *see also Camara v. Mun. Ct.*, 387 U.S. 523, 534, 540 (1967) (recognizing "a constitutional right" to insist that home inspectors obtain a search warrant for an otherwise unreasonable search, "and that appellant may not constitutionally be convicted for refusing to consent").

## A.

We turn first to the impact urine tests have on individual privacy interests, considering, as the Court did in *Birchfield*, the level of physical intrusion, the ability of the State to retain a sample containing other personal information, and the enhanced embarrassment a urine test is likely to cause during an arrest.

### 1.

The State argues that although the breath test upheld in *Birchfield* as a search incident to a valid arrest involved a "negligible" physical intrusion into an arrestee's bodily integrity, a urine test "need not involve *any* physical intrusion." Such a test neither " 'require[s] piercing the skin' " nor "extract[ing] a part of the subject's body." *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2178 (quoting *Skinner*, 489 U.S. at 625). For his part, Thompson argues that a urine test intrudes upon an individual's privacy interest. This intrusion, however, is not a physical one, and so we address this aspect of Thompson's argument later in our analysis.[5]

With respect to the physical intrusion portion of the analysis, we agree with the State that urine tests do not implicate many of the physical intrusion concerns the Court discusses in *Birchfield*'s analysis of blood tests. The administration of a urine test does not involve an intrusion beneath the surface of the skin, and urine is arguably "not part of [the human] bod[y]," given that urination is a "natural process" that would occur "sooner or later . . .

---

[5] Thompson and amicus American Civil Liberties Union note that urine testing *can* involve the taking of a urine sample through forced catheterization. The State concedes this point, but  this case does not involve that type of forced urine sample.

even without the test." *Id.* at ___, 136 S. Ct. at 2177. In terms of physical intrusion, therefore, a urine test is more similar to a breath test than a blood test. *Cf. id.* at ___, 136 S. Ct. at 2176-77 (discussing the minimal invasiveness of a breath test).

2.

Although urine tests resemble breath tests in terms of a lack of physical intrusiveness, the fact that a urine test "places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple [alcohol concentration] reading" makes urine tests comparable to blood tests. *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2178. Indeed, Thompson argues, there is an even greater risk associated with urine samples, as they can "contain additional metabolites and other types of 'highly personal information' that will never appear in a blood sample."

Regardless of whether urine samples contain *more* information than blood samples, the logic in the Court's analysis of blood tests applies with equal force to urine tests. A breath test, as the Court noted, is capable of revealing only one thing in the hands of law enforcement: an individual's blood-alcohol concentration. *Id.* at ___, 136 S. Ct. at 2177. Urine tests, on the other hand, can be used to detect and assess a wide range of disorders and can reveal whether an individual is pregnant, diabetic, or epileptic. *See Skinner*, 489 U.S. at 617. Moreover, no breath sample remains after a breath test, *see Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2177. But that is not true with respect to a urine test. Even when law enforcement is prohibited from using the collected urine samples for purposes other than alcohol concentration testing, "the potential [for abuse] remains and [the test] may result in anxiety for the person tested." *Id.* at ___, 136 S. Ct. at 2178. The taking of

11

a urine sample, therefore, raises the same privacy concerns that the Court addressed in *Birchfield* with regard to blood tests.[6]

3.

With respect to the third part of the analysis, Thompson, citing the Supreme Court's discussion in *Skinner*, contends that urine tests cause considerably more embarrassment for arrestees than breath tests. *See* 489 U.S. at 617 (" 'There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.' " (quoting *Nat'l Treasury Emps. Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir. 1987))). The State, on the other hand, argues that participation in a urine test need not involve any embarrassment nor an invasion of privacy, and that even if the test does implicate some privacy rights, arrestees have a diminished expectation of privacy once they are validly placed under arrest.

Urine tests for law enforcement purposes, regardless of how they are administered, implicate significant privacy interests. *See Skinner*, 489 U.S. at 617 ("[T]he process of collecting the sample to be tested, which may in some cases involve visual or aural

---

[6] The State contends that the retention of urine samples is comparable to the warrantless DNA collection that the Court upheld in *King*, ___ U.S. at ___, 133 S. Ct. at 1969. The buccal swab of an arrestee's inner cheek in that case was "reasonable" given the arrestee's diminished expectation of privacy and the "brief intrusion" of the swab. *Id.* at ___, 133 S. Ct. at 1979. The Court, however, went on to stress that it was not "suggest[ing] that any search is acceptable solely because a person is in custody." *Id.* at ___, 133 S. Ct. at 1979. Moreover, the warrantless search in *King* was not upheld as a search incident to a valid arrest, and as a result, *King* is inapposite to our analysis here.

12

monitoring of the act of urination, itself implicates privacy interests."). When an arrestee submits to a urine test on suspicion of drunk driving, the arrestee must urinate, on command, "in full view" of the arresting officer, who must witness the arrestee "void directly into the bottle." Bureau of Criminal Apprehension Forensic Sci. Lab., *Urine Collection Kit Instructions for Arresting Officer* (2011), https://dps.mn.gov/divisions/bca/ bca-divisions/forensic-science/Documents/Urine%20Specimen%20Collection%20Instruc tions.pdf. Because the participation in a urine test involves "a substantial invasion beyond the arrest itself," case law suggests that such a test cannot be justified as a search incident to an arrest. *See Riley*, ___ U.S. at ___, 134 S. Ct. at 2488.

In urging us to uphold the urine test as a valid search incident to arrest, the Minnesota Attorney General, as amicus on behalf of the State, contends that the "[p]rovision of a urine sample is not materially different from other full-body searches conducted incident to arrest." Similarly, the State asserts that the Court has long recognized body searches as valid when conducted incident to an arrest. But a search that involves an arrestee performing a personal and private bodily function "in full view" before law enforcement implicates privacy concerns in ways that even a thorough full-body search does not. Compared to blood testing, which does not involve an arrestee performing a private bodily function in front of law enforcement, urine testing involves a much greater privacy invasion in terms of embarrassment. This factor therefore strongly indicates that urine testing implicates weighty privacy concerns.

In sum, in terms of the impact on an individual's privacy, a urine test is more like a blood test than a breath test. Specifically, although a urine test does not require a physical

intrusion into the body in the same way as a blood test, urine tests have the potential to provide the government with more private information than a breath test, and there can be no question that submitting to a urine test under the watchful eye of the government is more embarrassing than blowing into a tube.

B.

On the other side of the balancing analysis, we consider the State's asserted need to obtain alcohol concentration readings through urine tests to prevent drunk driving. In *Birchfield*, the Court reiterated the state and federal government's "paramount interest" in preserving public-highway safety. ___ U.S. at ___, 136 S. Ct. at 2178. The Court further stated that the government's interest is not satisfied by simply removing suspected drunk drivers from the road through a lawful arrest because the government has a compelling interest in deterring drunk driving so individuals do not pose a threat to others in the first place. *Id.* at ___, 136 S. Ct. at 2179. Nor is the government's interest served in full, the Court reasoned, by authorizing administrative license revocation penalties that are "unlikely to persuade the most dangerous offenders." *Id.* at ___, 136 S. Ct. at 2179.

The reasonableness of a particular *type* of test to determine alcohol concentration depends, however, on the "availability of [] less invasive alternative" tests. *Id.* at ___, 136 S. Ct. at 2184. In concluding that the government interest in obtaining alcohol concentration readings through warrantless blood tests was diminished, the Court stressed that the government "offered no satisfactory justification for demanding the more intrusive alternative [test]" when a breath test, a reasonable search incident to a valid arrest, would typically serve the government's needs. *Id.* at ___, 136 S. Ct. at 2184. In situations in

14

which a breath test would *not* serve the government's interest, "[n]othing prevents the police from seeking a warrant" for an alternative test "when there is sufficient time to do so, . . . or from relying on the exigent circumstances exception to the warrant requirement when there is not." *Id.* at ___, 136 S. Ct. 2184.

Although *Birchfield* addressed the availability of breath tests as an alternative to warrantless blood tests, the same logic applies with equal force to warrantless urine tests. Breath tests, validly performed incident to an arrest, will serve the State's interest in deterring drunk driving and preserving highway safety. The availability of an alternative test impacts the reasonableness of urine tests just as it does blood tests. The State here presents no justifications for warrantless urine tests other than those the Court considered and rejected in *Birchfield* in the context of blood draws. *See Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2184 (rejecting the justification for warrantless blood tests based on a breath test's inability to detect controlled substances because the "police have other measures at their disposal when they have reason to believe that a motorist may be under the influence of some other substance"); *id.* at ___, 136 S. Ct. at 2184-85 (addressing the availability of alternative forms of testing for arrestees unable to perform a breath test and concluding that there is "no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be"). Accordingly, despite the State's "great" need for alcohol concentration testing, the availability of a less-invasive breath test weighs against the reasonableness of requiring the more revealing and embarrassing urine test absent a warrant or exigent circumstances.

Based on our analysis, we hold that a warrantless urine test does not qualify as a search incident to a valid arrest of a suspected drunk driver. Such tests significantly intrude upon an individual's privacy and cannot be justified by the State's interests given the availability of less-invasive breath tests that may be performed incident to a valid arrest.

II.

If we conclude that the warrantless blood or urine test would have been unconstitutional under the Fourth Amendment, the State argues that Thompson is still not entitled to relief because of the good-faith exception to the exclusionary rule, which we adopted in *State v. Lindquist*, 869 N.W.2d 863 (Minn. 2015).[7] The State argues that because the arresting officer objectively relied in good faith on binding appellate precedent in choosing not to obtain a warrant in Thompson's case, we should decline to suppress evidence of Thompson's test refusal and uphold his conviction.

We considered and rejected this precise argument in *Trahan*, No. A13-0931, slip op. at 11-12. As was the case in *Trahan*, the good-faith exception to the exclusionary rule has no application because Thompson has not sought to exclude any evidence the State wants to use against him. For the reasons we set out in *Trahan*, the State's good-faith exception argument fails.

---

[7] The good-faith exception to the exclusionary rule does not require the suppression of illegally obtained evidence when the evidence is obtained in " 'reasonable reliance' " on " 'binding appellate precedent' " that " 'specifically *authorizes* a particular police practice' " at the time of the search. *Lindquist*, 869 N.W.2d at 869 (quoting *Davis v. United States*, 564 U.S. 229, 241 (2011)).

III.

Having concluded that conducting a blood or urine test without a warrant violates the Fourth Amendment, the question remains whether Thompson can be prosecuted for refusing to submit to an unconstitutional search.[8] In *Birchfield*, the Court held under the Fourth Amendment that North Dakota could not prosecute the driver in that case for refusing to submit to an unconstitutional blood test. ___ U.S. at ___, 136 S. Ct. at 2186. We reach the same conclusion here and hold that Thompson cannot be prosecuted for refusing to submit to an unconstitutional warrantless blood or urine test, and that Minn. Stat. § 169A.20, subd. 2, is unconstitutional as applied.[9]

Affirmed.


CHUTICH, J., took no part in the consideration or decision of this case.

McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[8] At oral argument, the State asked us to limit the retroactive application of this ruling to cases pending on the date of this decision. Because the State raised the issue of the retroactive application of our ruling for the first time at oral argument, we need not decide this issue. *See State v. Morrow*, 834 N.W.2d 715, 724 n.4 (Minn. 2013).

[9] Because we hold that the test refusal statute is unconstitutional under the Fourth Amendment, we need not address Thompson's alternative arguments that the statute violates the doctrine of unconstitutional conditions and his Fifth Amendment right against self-incrimination.