*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0569**

Jesse John Susa, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed December 12, 2016
Affirmed
Cleary, Chief Judge
Concurring specially, Ross, Judge**

Pine County District Court
File No. 58-CV-15-498

Daniel J. Koewler, Charles A. Ramsay, Jay S. Adkins, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for respondent)

Lori Swanson, Attorney General, Dominic J. Haik, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

On appeal from the rescission of the revocation of respondent Jesse John Susa's driving privileges, the commissioner of public safety asserts that the district court erred by concluding that the warrantless collection of respondent's urine was unconstitutional.

Because we conclude that respondent's right to due process was violated, we affirm the district court's rescission.

## FACTS

In July 2015, respondent was arrested and transported to the Pine County Jail after a deputy initiated a traffic stop and determined there was probable cause to believe respondent was driving under the influence. The deputy read the implied-consent advisory to respondent, provided respondent an opportunity to contact an attorney, and asked respondent to provide either a blood or urine sample for laboratory analysis. The deputy made no effort to obtain a search warrant before seeking a blood or urine sample. Respondent provided a urine sample. Analysis of the sample indicated an alcohol concentration of 0.14. Respondent's driver's license was revoked. Respondent sought judicial review of the revocation of his driving privileges, arguing before the district court that his Fourth Amendment and due-process rights had been violated. The district court rescinded the revocation.

## D E C I S I O N

Appellant argues that the district court erred by concluding that the warrantless collection of respondent's urine was unconstitutional and asserts that the collection, performed pursuant to Minnesota's Implied Consent Law, was permissible under the Fourth Amendment. Respondent argues that the district court's order rescinding the

2

revocation should be affirmed, because respondent was fundamentally misled by law enforcement in violation of his right to due process.[1]

Under Minnesota's Implied Consent Law, any person who drives a motor vehicle within the state consents to a chemical test of his blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance. Minn. Stat. § 169A.51, subd. 1 (2014). An officer who requires a test may direct whether the test is blood, breath, or urine. Minn. Stat. § 169A.51, subd. 3 (2014). Minnesota's test-refusal statute makes it a crime to refuse to submit to a chemical test when an officer has probable cause to believe that a person was driving, operating, or physically controlling a motor vehicle while impaired and has read the person the implied-consent advisory. Minn. Stat. §§ 169A.20, subd. 2, .51, subds. 1-2 (2014); *State v. Thompson*, 873 N.W.2d 873, 876 (Minn. App. 2015) (*Thompson I*), *aff'd*, 886 N.W.2d 224 (Minn. 2016). However, no action may be taken against a person who refuses either a blood or urine test unless an alternative test was offered. Minn. Stat. § 169A.51, subd. 3. If a person submits to a test and the results indicate an alcohol concentration of 0.08 or more, those results

---

[1] Appellant urges us not to consider respondent's due-process challenge, arguing that the district court did not address it and that respondent waived the issue by failing to seek review pursuant to Minnesota Rule of Civil Appellate Procedure 106. This rule provides, "[a]fter an appeal has been filed, respondent may obtain review of a judgment or order entered in the same underlying action that may adversely affect respondent by filing a notice of related appeal." Minn. R. Civ. App. P. 106. However, appellant's argument is without merit. "[W]here a party litigated two separate grounds for recovery and the district court made its decision based on one and not the other, that party can stress any sound reason for affirmance even if it is not the one assigned by the trial judge, in support of that decision." *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010) (quotations omitted). Because respondent raised both Fourth Amendment and due-process challenges before the district court, he may stress either ground for affirmance.

must be reported to the commissioner, and the commissioner shall revoke the person's license upon certification by the officer that there was probable cause to believe the person was driving while impaired. Minn. Stat. § 169A.52, subds. 2, 4 (2014).

Respondent asserts that his due-process rights were violated because the implied-consent advisory contained a misleading statement. The United States and Minnesota Constitutions provide that an individual may not be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Minn. Const. art 1 § 7. Whether a due-process violation has occurred presents a question of constitutional law, which we review de novo. *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

Relying on *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848 (Minn. 1991), respondent specifically argues that his due-process rights were violated because the implied-consent advisory included the misleading statement, "[r]efusal to take a test is a crime." Appellant does not directly respond to this assertion, but continues to argue that the urine test was permissible under the Fourth Amendment or, alternatively, was within the good-faith exception.

Where a person bases a due-process claim solely on an alleged Fourth Amendment violation, a court must review the claim under the Fourth Amendment rather than under the more generalized notion of substantive due process. *See State v. Thompson*, 886 N.W.2d 224, 230 n.4 (*Thompson II*) (noting that the Court, in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), concluded that the warrantless blood test violated the Fourth Amendment and did not engage in a due-process analysis); *see also Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994) (explaining that where a particular amendment

4

provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims). Here, however, respondent's due-process claim is not based on the Fourth Amendment. Rather, it is based on the theory that the implied-consent advisory misled respondent regarding his legal obligation to submit to a blood or urine test. Furthermore, respondent's claim does not attempt to expand substantive-due-process relief, as the Minnesota Supreme Court has granted the relief respondent requests where a similar claim was asserted.[2] *See McDonnell*, 473 N.W.2d at 853-55 (rescinding a license revocation where police threatened criminal charges that the state was not authorized to impose). Because respondent's challenge is based upon the officer's misleading advisory rather than on an alleged Fourth Amendment violation and because it does not attempt to expand substantive due process, due-process analysis is appropriate.[3] *See Johnson v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, 2016 WL

---

[2] "Assuming, without deciding, that the due-process claim in *McDonnell* was substantive, *McDonnell* establishes substantive-due-process relief when an implied-consent advisory misinforms a person subject to testing under Minnesota's implied-consent law that she could be charged with the crime of test refusal when such a charge is impossible." *Johnson v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, 2016 WL 6570284, at *4 (Minn. App. Nov. 7, 2016) (citing *McDonnell*, 473 N.W.2d at 855). A challenge seeking relief under *McDonnell* is not an attempt to expand substantive due process. *Id.*

[3] In *Thompson II*, the Minnesota Supreme Court relied on the Fourth Amendment to hold that the test-refusal statute was unconstitutional. *Thompson II*, 886 N.W.2d at 228-30, 230 n.4. The court used the framework set forth in *Birchfield*, in which the United States Supreme Court was asked to determine whether laws criminalizing a motorist's refusal to be tested after being lawfully arrested for driving while impaired violate the Fourth Amendment. *Id.* at 230-34. *Birchfield*, 136 S. Ct. at 2166-67. To answer this question, the Supreme Court explained that a state may criminalize the refusal to submit to the required testing if the warrantless searches comport with the Fourth Amendment.

5

6570284, at *4-6 (Minn. App. Nov. 7, 2016) (holding a due-process challenge to an inaccurate implied-consent advisory should be analyzed as a due-process claim).

The Minnesota Supreme Court has recognized due-process claims similar to the one that respondent asserts here. In *McDonnell*, the Minnesota Supreme Court was asked to determine whether a driver's due-process rights were violated where the implied-consent advisory misinformed her that she might be prosecuted for test refusal. *McDonnell*, 473 N.W.2d at 853. In the portion of *McDonnell* addressing appellant-driver Moser, the court explained that Moser was arrested on suspicion of driving while intoxicated. *Id.* at 851. She was transported to the police headquarters and read the implied-consent advisory, including a warning that refusal to submit to testing might expose her to criminal penalties. *Id.* Moser concluded that she would be subject to criminal penalties for test refusal and submitted to a breath test. *Id.* Based on the results of the test, Moser's license was revoked. *Id.* Moser appealed and asserted that her due-process rights had been violated because, as a person without any previous license revocations, she could not be punished under the criminal test-refusal statute then in effect. *Id.* at 851, 853. The court reasoned that "due process does not permit those who are perceived to speak for the state to mislead

---

*Birchfield*, 136 S. Ct. at 2172. The use of the Fourth Amendment analysis in *Birchfield* and the Minnesota Supreme Court's *Thompson II* opinion does not change our conclusion that due-process analysis is appropriate in this case. The constitutional protection at issue in both *Birchfield* and *Thompson II* was the Fourth Amendment right to be free from unreasonable searches and seizures. Here, the constitutional protection at issue is the right to due process during an implied-consent procedure. Furthermore, this court has previously determined that due-process analysis is appropriate under these circumstances. *Johnson*, 2016 WL 6570284, at *3-6 (concluding that due-process analysis was appropriate where a respondent asserted a similar claim).

individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations." *Id.* at 854. The court concluded that the advisory was unconstitutional as applied to Moser, because it "permitted police to threaten criminal charges the state was not authorized to impose." *Id.* at 855.

Relying on *McDonnell*, we concluded that drivers who were misinformed by police as to the potential consequences of their testing decisions were entitled to rescission of their license revocations. *See, e.g.*, *Olinger v. Comm'r of Pub. Safety*, 478 N.W.2d 806, 807-08 (Minn. App. 1991); *Steinolfson v. Comm'r of Pub. Safety*, 478 N.W.2d 808, 808-09 (Minn. App. 1991). Furthermore, we determined that such drivers were entitled to relief regardless of whether they submitted to or refused testing. *Steinolfson*, 478 N.W.2d at 809 ("The advisory gives misleading and inaccurate information to every first-time offender, and the driver's subsequent decision regarding testing does not diminish the violation."). Because the improper threat of criminal charges itself constitutes the violation, no showing of actual prejudice is required. *Olinger*, 478 N.W.2d at 808.

Respondent asserts that recent holdings of this court and the United States Supreme Court make clear that he could not have been criminally punished for test refusal and that the deputy's statement that test refusal was a crime was misleading. In *State v. Trahan* and *State v. Thompson*, this court made clear that a driver cannot be criminally punished for his refusal to submit to either a warrantless blood test or a warrantless urine test where no exception to the warrant requirement applies. *Thompson I*, 873 N.W.2d at 878-80, *aff'd*, 886 N.W.2d 224 (Minn. 2016); *State v. Trahan*, 870 N.W.2d 396, 403-05 (Minn. App. 2015) (*Trahan I*), *aff'd*, 886 N.W.2d 216 (Minn. 2016). Our holdings in *Thompson I* and

7

*Trahan I* have now been affirmed by the Minnesota Supreme Court and supported by the United States Supreme Court's decision in *Birchfield*. *Birchfield*, 136 S. Ct. at 2184-87; *Thompson II*, 886 N.W.2d at 234; *State v. Trahan*, 886 N.W.2d 216, 224 (Minn. 2016) (*Trahan II*). In *Birchfield*, the Court held that a warrantless blood test cannot be justified under either the search-incident-to-arrest exception or on the basis of implied consent. *Birchfield*, 136 S. Ct. at 2184-86. Concluding that a state cannot compel both blood and breath tests, the Court determined that an officer's advisory was partially inaccurate where it stated that test refusal is a crime. *Id.* at 1272, 1286.

Respondent explains that the deputy's statement to him that "[r]efusal to take a test is a crime" was similarly misleading, because he could not have been criminally punished for exercising his right to refuse testing. Appellant asserts that all facets of the implied-consent statute had been held to be constitutional with respect to urine testing when the deputy read the implied-consent advisory. Appellant argues that we should reverse the district court's order rescinding respondent's driving privileges, because the advisory was accurate when read. Although the events at issue occurred before the *Trahan*, *Thompson*, and *Birchfield* decisions were issued, we are not persuaded by appellant's argument.

This court has previously applied the holding of *Thompson II* to a case in which the events at issue occurred prior to the issuance of the *Thompson II* decision. *See Johnson*, 2016 WL 6570284, at *12-13 (applying *Thompson II* and concluding that Johnson's right to due process was violated). In *Johnson*, an officer arrested Johnson for driving while impaired (DWI) and transported him to a local emergency room. *Id.* at *1. At the hospital, the officer read Johnson the implied-consent advisory and informed Johnson that refusal

8

to take a urine test was a crime. *Id.* Johnson did not submit to either the urine test or blood test offered by the officer, and his license was revoked on the basis of his test refusal. *Id.* at *1-2. We determined that the advisory was inaccurate, because Johnson could not be criminally prosecuted for refusing to consent to the unconstitutional urine test under *Thompson II*. *Id.* at *13. As a result, we held that Johnson's right to due process was violated and affirmed the district court's order rescinding the revocation of Johnson's license. *Id.*

That respondent submitted to the urine test does not compel us to depart from our reasoning in *Johnson*. As we have previously recognized, it is the improper threat that constitutes the violation. *Olinger*, 478 N.W.2d at 808. An advisory that gives misleading information violates a driver's right to due process, and the violation is not diminished by the driver's subsequent decision regarding testing. *Steinolfson*, 478 N.W.2d at 809. For these reasons, we conclude that respondent is entitled to claim the benefit of the holding announced in *Thompson II*.[4]

---

[4] At oral argument, respondent asserted that new substantive rules of federal constitutional law were announced in the *Trahan*, *Thompson*, and *Birchfield* decisions and must be given retroactive effect under *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). In *Montgomery*, the Court explained that *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989), recognized that new substantive rules of federal constitutional law are not subject to the general retroactivity bar, which bars courts from applying new constitutional rules of criminal procedure to convictions that were final when the new rule was announced. *Montgomery*, 136 S. Ct. at 728; *see also Danforth v. State*, 761 N.W.2d 493, 498-99 (Minn. 2009) (adopting the federal *Teague* test to determine retroactivity). However, respondent's brief included neither this argument nor any citation to *Montgomery*. Issues not briefed on appeal are not properly before the appellate court. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982). Because respondent failed to properly brief the issue and because no final conviction is at issue here, we decline to address whether new substantive rules of federal constitutional law were announced.

In this case, the deputy informed respondent that "[r]efusal to take a test is a crime." At the implied-consent hearing, the deputy testified that there was no emergency or need to perform an exigent search. Recent holdings of the Minnesota Supreme Court and the United States Supreme Court make clear that the state cannot criminally punish respondent for his refusal to submit to either the blood or urine tests offered by the deputy. *See Birchfield*, 136 S. Ct. at 2186 (concluding that North Dakota could not prosecute a driver for refusing to submit to an unconstitutional blood test); *Thompson II*, 886 N.W.2d at 234 (holding that a driver cannot be prosecuted for refusing to submit to an unconstitutional warrantless blood or urine test); *Trahan II*, 886 N.W.2d at 224 (holding that a driver cannot be prosecuted for refusing to submit to an unconstitutional warrantless blood test). Because the deputy threatened respondent with criminal penalties that the state was not authorized to impose, respondent's due-process rights were violated. The district court did not err by rescinding the revocation of respondent's license, because respondent was entitled to such relief under *McDonnell*.

Appellant makes no argument regarding what relief is appropriate in due-process challenges. Rather, appellant continues to argue that the urine test is admissible under the Fourth Amendment. First, appellant argues that the good-faith exception to the exclusionary rule applies, because the deputy reasonably relied on binding precedent. The exclusionary rule and good-faith exception are Fourth Amendment doctrines. The Minnesota Supreme Court explained in *State v. Lindquist*, 869 N.W.2d 863, 868-70 (Minn.

2015), that the exclusionary rule to the Fourth Amendment is a prudential doctrine and that the good-faith exception permits the admission of certain evidence obtained in violation of a defendant's Fourth Amendment rights against unreasonable searches and seizures. Appellant fails to provide any legal authority to support the application of the good-faith exception to due-process violations. Absent such authority, we decline to extend the good-faith exception.

Next, appellant argues that the exclusionary rule should not be applied, because the revocation of respondent's driver's license occurred by administrative rather than criminal processes. Again, appellant continues to focus on Fourth Amendment doctrine and does not address respondent's due-process arguments. Appellant fails to cite to any binding, legal authority to support the assertion that we must distinguish between criminal and civil proceedings when considering a due-process challenge.[5] In *Birchfield*, the United States Supreme Court addressed only whether the Fourth Amendment permits warrantless chemical testing and did not consider a due-process challenge. 136 S. Ct. at 2160-87. Similarly, the Court's analysis in *Pennsylvania Bd. of Prob. & Parole v. Scott* focused on the Fourth Amendment. 524 U.S. 357, 364, 118 S. Ct. 2014, 2020 (1998). In *Scott*, the Court considered whether the exclusionary rule barred the introduction of evidence seized in violation of a parolee's Fourth Amendment rights and mentioned due process only in a

---

[5] Although appellant cites several unpublished cases from this court, we are not bound to follow them. Minn. Stat. § 480A.08, subd. 3 (2014); *Freeman v. State*, 804 N.W.2d 144, 147 (Minn. App. 2011), *review denied* (Minn. Dec. 13, 2011). Furthermore, the cited cases do not support the admission of a chemical test in a civil proceeding where the person who submitted to the test asserts a due-process challenge based on the theory that he was misled as to the consequences of test refusal.

11

footnote to explain that parolees are not entitled to the full panoply of due-process rights to which criminal defendants are entitled. *Id.* at 364, 365 n.5, 118 S. Ct. at 2020, 2021 n.5. Because appellant fails to cite to any binding authority that would require us to differentiate between criminal and administrative proceedings when considering a due-process challenge, we decline to do so in this case.

Because we hold that respondent's due-process rights were violated, we need not determine whether the warrantless collection of respondent's urine was permissible under the Fourth Amendment. The district court did not err by rescinding the revocation of respondent's driving privileges.

**Affirmed.**

**ROSS**, Judge (concurring specially)

The majority treats the issue raised in this case as one of due process. The highest state and federal courts teach that, instead, the issue should be addressed under the more specific search jurisprudence of the Fourth Amendment. I write separately to say that we should be applying the principles of the Fourth Amendment, not those of due process, to the state's appeal.

For reasons I need not develop here, I believe that if we were to apply the Fourth Amendment, either we would refuse to suppress the evidence of Jesse Susa's positive urine test because the exclusionary rule does not restrict evidence obtained as the result of an officer's good-faith but mistaken understanding of the law at the time (*see State v. Lindquist*, 869 N.W.2d 863, 876–77 (Minn. 2015) (holding blood-test evidence admissible because a reasonable officer would have read the extant caselaw as allowing a warrantless blood draw under the circumstances)), or we would remand the case to the district court to consider whether Susa's consent was voluntary and valid notwithstanding the constitutionally infirm advisory (*see Beylund v. North Dakota*, 136 S. Ct. 2537 (2016) (mem.) (reversing and remanding to determine voluntariness of the driver's consent in light of *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186–87 (2016))). Rather than discuss in detail the outcome that I believe the Fourth Amendment would demand, I merely emphasize why we should apply the Fourth Amendment rather than the Due Process Clause.

We should apply the Fourth Amendment and not general principles of due process because we have been advised to do so by both courts that frame our analyses in these

cases: the United States Supreme Court and the Minnesota Supreme Court. The United States Supreme Court specifically directed courts to choose only the specifically applicable constitutional rule. That Court in *County of Sacramento v. Lewis* emphasized this duty when it repeated that, "'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" 523 U.S. 833, 842, 118 S. Ct. 1708, 1714 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994)). Our state supreme court recently quoted this language from *Lewis* when it intimated that this court should have relied on the Fourth Amendment instead of the Due Process Clause when we decided in *State v. Thompson*, 873 N.W.2d 873, 880 (Minn. App. 2015), that the state may not constitutionally punish a suspected drunk driver for refusing to submit to a urine test. *State v. Thompson*, 886 N.W.2d 224, 228 n.2 (Minn. 2016). The state supreme court observed that the United States Supreme Court in *Birchfield* "did not examine whether criminalizing the refusal to submit to an unconstitutional search violated the Due Process Clause" but rather decided the case based on whether "the warrantless blood test violated the Fourth Amendment." *Id.* at 230 n.4; *see also State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013) (analyzing validity of a suspected drunk driver's consent to chemical testing under the Fourth Amendment). Simply put, the two courts that direct how we must approach implied-consent questions like the one we face today have applied only the Fourth Amendment, not the Due Process Clause, and so should we.

I recognize that the legality of the chemical-test advisory and the legality of criminalizing a chemical-test refusal are somewhat different things. But they are inextricably and identically intertwined in the Fourth Amendment. The very reason the legality of the chemical-test advisory is suspect as applied to urine tests is specifically because of the recent and specific holding that *the Fourth Amendment* prohibits the state from criminalizing urine-test refusals. I think it is unnecessarily complicating to address the issue under the general notion of due process, in addition to being an approach deliberately eschewed by the *Birchfield* Court and *Thompson* court.

I also recognize that we recently published an opinion considering but rejecting the commissioner's argument that the Fourth Amendment rather than the Due Process Clause provides the proper framework for a challenge like Susa's. *Johnson v. Comm'r of Pub. Safety*, ___ N.W.2d ____, ____, 2016 WL 6570284, at *3 (Minn. App. Nov. 7, 2016). Although *Johnson* is exceptionally reasoned, I am not persuaded by it that the supreme court will or should abandon its recently stated commitment to apply only the Fourth Amendment in this context. We are, however, bound by precedent, and so in light of *Johnson*, I concur in (rather than dissent from) the majority's approach and decision today.