2017 ND 207

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Steven Floyd HELM, Defendant and Appellee**

**No. 20170036**

Supreme Court of North Dakota.

Filed 8/29/2017

Cherie L. Clark (argued), Assistant State's Attorney, and Reid A. Brady (appeared), Fargo, N.D., for plaintiff and appellant.

Monty G. Mertz, Fargo, N.D., for defendant and appellee.

Danny L. Herbel (on brief), Bismarck, N.D., for amicus curiae North Dakota Association of Criminal Defense Lawyers.

McEvers, Justice.

[¶ 1] The State appeals from an order granting Steven Helm's motion to dismiss a criminal prosecution against him for refusing to submit to a warrantless urine test incident to arrest. We conclude the State may not criminally prosecute Helm for refusing to submit to the warrantless urine test incident to arrest, and we affirm the order.

---

1. Section 39–20–01(3)(a), N.D.C.C., was amended effective August 1, 2017, by 2017

## I

[¶ 2] At 1:30 a.m. on May 5, 2016, a law enforcement officer observed Helm driving a motor vehicle without headlights. After interaction with Helm during a traffic stop, the officer suspected Helm was driving under the influence of a controlled substance. Helm was ultimately arrested for driving under the influence, and he subsequently refused to submit to a warrantless urine test incident to the arrest. The State charged Helm with refusing to submit to a chemical test.

[¶ 3] The district court granted Helm's motion to dismiss, ruling the requested warrantless urine test incident to arrest was like a warrantless blood test incident to arrest under *Birchfield v. North Dakota*, — U.S. —, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). The court concluded the exception to the warrant requirement for a search incident to arrest did not apply to the warrantless urine test and Helm could not be criminally prosecuted for refusing the warrantless urine test.

## II

[¶ 4] Section 39–08–01, N.D.C.C., criminalizes a driver's refusal to submit to a law enforcement officer's request under N.D.C.C. § 39–20–01 for a chemical test of the driver's blood, breath, or urine. Section 39–20–01, N.D.C.C., provides that any individual operating a motor vehicle on a highway of this State is deemed to have given consent to a chemical test of the individual's blood, breath, or urine to determine the alcohol concentration or presence of drugs in the individual's blood, breath, or urine, and authorizes a law enforcement officer to determine which test to request. At the time relevant to this proceeding, N.D.C.C. § 39–20–01(3)(a) [1] described the implied consent advisory:

---

N.D. Sess. Laws, ch. 268, § 4, and now provides:

The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take the test to determine whether the individual is under the influence of alcohol or drugs; that refusal to take the test directed by the law enforcement officer is a crime punishable in the same manner as driving under the influence; and that refusal of the individual to submit to the test directed by the law enforcement officer may result in a revocation for a minimum of one hundred eighty days and up to three years of the individual's driving privileges.

[¶ 5] The State argues the district court erred in ruling the requested warrantless urine test, which the State claims would have been administered without requiring any exposure of the arrestee's genitals, was constitutionally reasonable as a search incident to an arrest for drug-based charges of driving under the influence. The State claims a critical factor for evaluating the reasonableness of a chemical test is the manner of administration and argues warrantless urine tests administered without requiring exposure of the arrestee's genitals are reasonable under the search incident to arrest exception to the warrant requirement. The State argues that not requiring exposure of the arrestee's genitals establishes a categorical rule for allowing a warrantless urine test incident to arrest for a drug-based charge of driving while impaired.

[¶ 6] The Fourth Amendment prohibits unreasonable searches and seizures, and the administration of urine tests are searches under that provision. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). The touchstone for a search under the Fourth Amendment is reasonableness and typically requires law enforcement to obtain a judicial warrant before conducting a search. *Birchfield*, 136 S.Ct. at 2173. Searches conducted outside the judicial process without a warrant are per se unreasonable subject only to a few explicitly established and well delineated exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

[¶ 7] The exception at issue in this case is for a search incident to a lawful arrest [2], which was at issue in *Birchfield*, 136 S.Ct. at 2174–85. In *Birchfield*, at 2172, the United States Supreme Court consolidated two implied-consent cases from North Dakota and one from Minnesota "to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." *See State v. Birchfield*, 2015 ND 6, 858 N.W.2d 302; *Beylund v. Levi*, 2015 ND 18, 859 N.W.2d 403; and

The law enforcement officer shall inform the individual charged that North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and that refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges for a minimum of one hundred eighty days and up to three years. In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant.

2. Helm has not argued his arrest was unlawful, and we assume it was lawful for purposes of this appeal.

*State v. Bernard,* 859 N.W.2d 762 (Minn. 2015). The United States Supreme Court differentiated between blood and breath tests and held the Fourth Amendment permits warrantless breath tests incident to a lawful arrest for drunk driving, but does not permit warrantless blood tests incident to a lawful arrest for drunk driving. 136 S.Ct. at 2184–85. The Supreme Court analyzed the two different types of chemical tests " 'by assessing, on the one hand, the degree to which [the tests] intrud[ed] upon an individual's privacy and, on the other, the degree to which [the tests are] needed for the promotion of legitimate governmental interests.' " *Id.* at 2176 (quoting *Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2484, 189 L.Ed.2d 430 (2014)).

[¶ 8] In assessing the intrusion of blood and breath tests upon individual privacy, the Supreme Court considered three factors: (1) the extent of the physical intrusion upon the individual to obtain the evidence; (2) the extent to which the evidence could be preserved to provide additional, unrelated private information; and (3) the extent to which participation in the search would enhance the embarrassment of the arrest. *Birchfield,* 136 S.Ct. at 2176–78. Under that framework, the Court said warrantless breath tests incident to lawful arrests for drunk driving do not implicate significant privacy concerns because breath tests have only a slight or almost negligible impact on individual privacy, breath tests reveal only a blood alcohol concentration with no sample left in the possession of law enforcement, and breath tests are not likely to enhance the embarrassment inherent in any arrest. *Id.* The Court said blood tests, however, require piercing the skin to extract part of the subject's body and are significantly more intrusive than breath tests. *Id.* at 2178. The Court also explained a blood sample, unlike a breath test, can be preserved and reveal other private information beyond a blood alcohol reading. *Id.* In assessing the State's asserted need to obtain blood alcohol concentration readings for persons arrested for drunk driving, the Supreme Court recognized the government's paramount interest in preserving safety on public highways and concluded that laws criminalizing test refusals serve a very important function. *Id.* at 2178–79.

[¶ 9] After balancing the individual and governmental interests, the Supreme Court held the Fourth Amendment permits warrantless breath tests incident to a lawful arrest for drunk driving, but does not permit warrantless blood tests incident to a lawful arrest. *Birchfield,* 136 S.Ct. at 2184–85. The Court thus concluded a driver could be prosecuted for refusing a warrantless breath test incident to a lawful arrest, but could not be prosecuted for refusing a warrantless blood test. *Id.* at 2186.

[¶ 10] *Birchfield* did not address warrantless urine tests administered as a search incident to a lawful arrest. Under the *Birchfield* framework, however, the Minnesota Supreme Court has held warrantless urine tests are not permissible as a search incident to a valid arrest of a suspected drunk driver. *State v. Thompson,* 886 N.W.2d 224, 230–33 (Minn. 2016), *cert. denied,* —— U.S. ——, 137 S.Ct. 1338, 197 L.Ed.2d 520 (2017). The Minnesota Supreme Court concluded the physical intrusion of a urine test on an arrestee's bodily integrity was similar to the intrusion of a breath test. *Id.* at 230. The court said, however, a urine test raised the same privacy concerns as a blood test regarding the amount of information obtained by law enforcement and the potential for abuse involved with the retention of a urine sample. *Id.* at 230–31. The court also said urine tests implicate significant privacy interests and cause considerably more embarrassment to an arrestee than breath tests,

because under the urine collection instructions at issue in that case "[w]hen an arrestee submits to a urine test on suspicion of drunk driving, the arrestee must urinate, on command, 'in full view' of the arresting officer, who must witness the arrestee 'void directly into the bottle.'" *Id.* at 231–32. The court thus concluded the intrusion on an arrestee's privacy for a urine test was like the blood test in *Birchfield*:

> In sum, in terms of the impact on an individual's privacy, a urine test is more like a blood test than a breath test. Specifically, although a urine test does not require a physical intrusion into the body in the same way as a blood test, urine tests have the potential to provide the government with more private information than a breath test, and there can be no question that submitting to a urine test under the watchful eye of the government is more embarrassing than blowing into a tube.

*Thompson,* at 232.

[¶ 11] In balancing the arrestee's privacy interests against the State's need for evidence of a driver's blood alcohol concentration, the Minnesota Supreme Court explained that "despite the State's 'great' need for alcohol concentration testing, the availability of a less-invasive breath test weighs against the reasonableness of requiring the more revealing and embarrassing urine test absent a warrant or exigent circumstances." *Thompson,* 886 N.W.2d at 233. The court thus held a warrantless urine test did not meet requirements for a search incident to a valid arrest of a suspected drunk driver and the driver could not be prosecuted for refusing to submit to an unconstitutional warrantless urine test incident to arrest. *Id.* at 233–34.

[¶ 12] The State argues *Thompson* is distinguishable because that case involved a suspected drunk driver and not a driver allegedly impaired by only drugs. The State argues because Helm was alleged to be under the influence of drugs, there is no less intrusive test to be administered than a urine test. The State further argues the proposed categorical rule for this case would not require a law enforcement officer to visually observe the arrestee's genitals during the urine test. While the lack of a less-intrusive test may weigh in favor of the reasonableness of the State to test in this manner, we are not persuaded by the State's argument.

[¶ 13] This record includes the State's form for "submission for urine" on file with the State Toxicologist, which includes the following checklist:

CHECK EACH STEP PERFORMED

> NOTE: If submitting for Drug Analysis Only (not alcohol), begin with STEP 3.
>
> *SAMPLE DISPOSAL WILL OCCUR 12 MONTHS AFTER ANALYSIS REPORTING DATE.*

STEP 1     ☐ Instruct the subject to void.

STEP 2     ☐ Establish a minimum 20 minute waiting period.

STEP 3     ☐ Open an intact kit.

STEP 4     ☐ Observed white powder in the specimen container.

STEP 5     ☐ Collect the sample directly into the specimen container. Do not discard powder. Transferring of sample from one receptacle to another is not recommended.

STEP 6     ☐ Instruct the subject to fill the specimen container to about 3/4 full. Take necessary precautions to avoid contamination.

STEP 7     ☐ Fill in the label and place it over the top and down the sides of the specimen container.

STEP 8     ☐ Insert the specimen container into the Ziploc bag provided and seal the bag.

STEP 9     ☐ Insert the completed top portion of this form into the kit box.

STEP 10     ☐ Place the bag containing the specimen in the kit box.

STEP 11     ☐ Close the kit box and seal it with the completed kit box shipping seal provided.

STEP 12     ☐ Complete the return address on the kit box top.

[¶ 14] This record also includes an affidavit by the arresting officer describing how he administers a urine test:

11. I have administered approximately 2 urine tests while serving as a police officer. While administering a urine test for a person arrested for driving while under the influence of drugs, I use the following procedures: At the Cass County Jail, I accompany the arrestee, who has been searched, to a restroom. The restroom has a toilet and a sink. Once in the restroom, I shut the door and hand the specimen container from the ND Crime Lab's kit to the arrestee. I then stand behind the arrestee at an approximately 45 degree angle, such that I cannot see the arrestee's genitals. From there, I ensure that the arrestee does not fill the container with water from the toilet or sink. At no point do I see the arrestee's genitals, and no one is permitted to enter the restroom while the arrestee is participating in the urine test.

12. The average length of time spent in the restroom for the urine test is approximately 2–4 minutes.

13. If an arrestee is not able to urinate shortly after arrival at the jail, I offer water or Gatorade to the arrestee and allow the arrestee to start getting booked in. Once the

arrestee indicates he is able to go, the booking-in procedure can be interrupted so the urine test can be completed.

14. I am not aware of any test less invasive than a urine test to determine the presence of drugs in a person's body.

[¶ 15] The State's form for submission of urine does not provide any specific guidelines or instructions for law enforcement officer's visual observations during a urine test. Under that form, the State's proposed "categorical" rule is, in essence, subject to an officer's case-by-case administration of a urine test and is particularly unwieldy for female arrestees. *See Skinner*, 489 U.S. at 621–24, 109 S.Ct. 1402 (discussing minimal discretion vested in those administering urine tests under federal railroad regulations); *Von Raab*, 489 U.S. at 661–62, 109 S.Ct. 1384 (describing administration of urine tests under customs service program for drug testing). Moreover, the arresting officer's method for standing behind the arrestee at a 45 degree angle may prevent visual observation of an arrestee's genitals in many instances, but does not eliminate privacy concerns associated with forced urination in the immediate presence of a law enforcement officer. Regardless of those privacy concerns and the embarrassment accompanying an arrestee's proximity to a law enforcement officer during a urine test, the State's position also does not take into account the privacy concerns and potential abuse raised by the preservation of a urine sample and the wide range of information that law enforcement can extract from the sample. *See Thompson*, 886 N.W.2d at 231 (citing *Birchfield* and *Skinner* and discussing broad scope of information revealed by urine tests). In the absence of narrowly crafted requirements addressing an arrestee's privacy interests and the preservation or use of other private information available from a urine test, we decline the State's invitation to adopt by judicial rule the State's proposed categorical rule for warrantless urine tests incident to an arrest.

[¶ 16] Rather, on this record, we agree with the rationale of the Minnesota Supreme Court in *Thompson* and conclude that urine tests under the Department's form for submission of urine and the arresting officer's protocol are like blood tests under *Birchfield*. We conclude a warrantless urine test is not a reasonable search incident to a valid arrest of a suspected impaired driver and the driver cannot be prosecuted for refusing to submit to an unconstitutional warrantless urine test incident to arrest. We therefore conclude the district court did not err in dismissing the charge against Helm for refusing to submit to a warrantless urine test.

III

[¶ 17] We affirm the district court order granting Helm's motion to dismiss.

[¶ 18] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Carol Ronning Kapsner, S.J.

Gerald W. VandeWalle, C.J.

[¶ 19] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.