LILLEHAUG, Justice.
*817 Appellant Scott Ross Hunn was stopped and arrested for driving while impaired (DWI). At the jail, the sheriff's deputy, without reading the implied-consent advisory, asked him if he would consent to urine testing. Hunn provided a urine sample, which tested positive for amphetamine and methamphetamine. Hunn was charged with second-degree DWI for violating Minnesota Statutes § 169A.20. subd. 1(7) (2016). On Hunn's motion, the district court suppressed the urine test results because the deputy failed to read the implied-consent advisory that would have advised Hunn of his right to counsel. The court of appeals reversed, concluding that, because the advisory was not read, there was no violation of the limited right to counsel that we recognized in Friedman v. Commissioner of Public Safety , 473 N.W.2d 828 (Minn. 1991). State v. Hunn , 899 N.W.2d 541, 545 (Minn. App. 2017). Because Friedman applies only to implied-consent cases, we affirm the court of appeals.
FACTS
On February 21, 2016, appellant Scott Ross Hunn was pulled over by a Mower County sheriff's deputy for rolling through a stop sign. Hunn told the deputy that he had consumed one beer. The deputy observed that Hunn "spoke in a rapid fashion, struggled to stay on topic in conversation, had dilated pupils and seemed very nervous." These observations led the deputy to suspect that Hunn was under the influence of a controlled substance, so he asked Hunn to perform field sobriety tests. Hunn successfully performed the walk-and-turn test, but failed the horizontal-gaze-nystagmus and one-leg-stand tests. His preliminary breath test was under the legal limit for alcohol. Following these tests, Hunn was placed under arrest for DWI.
Hunn was taken to the Mower County Jail. At the jail, without reading the implied-consent advisory, the deputy asked Hunn, "Will you take a urine test?" Hunn answered, "Why not?" and the deputy responded, *818 "So yes." The deputy never told Hunn that he had the right to speak with an attorney, nor did Hunn ask to contact one. No warrant was obtained for the urine test. Hunn's urine tested positive for amphetamine and methamphetamine.
Hunn was charged with three counts: (1) a gross misdemeanor for driving a motor vehicle while his body contained "any amount of a controlled substance listed in Schedule I or II," Minn. Stat. § 169A.20, subd. 1 (7); (2) a misdemeanor for driving without proof of insurance, Minn. Stat. § 169.791, subd. 2(a) (2016) ; and (3) a petty misdemeanor for possession of drug paraphernalia, Minn. Stat. § 152.092 (2016). Hunn pleaded not guilty to all three charges.
In district court, Hunn brought an omnibus motion arguing, as relevant here, that the results of the urine test should be suppressed because the deputy "did not properly inform [Hunn] of [his] rights or consequences for taking or refusing a chemical test." The district court granted Hunn's motion in part, concluding that, by failing to read the implied-consent advisory, the deputy "fail[ed] to allow Hunn to vindicate his right to counsel prior to testing." In reaching this conclusion, the court relied on the limited right to counsel that we recognized in Friedman . See 473 N.W.2d at 832.
The State appealed, and the court of appeals reversed. The court noted that " Friedman is an implied-consent case, and the limited right to counsel discussed therein applies only in situations where chemical testing is sought under the implied-consent law." Hunn , 899 N.W.2d at 545. Unlike in Friedman , the court said, "the deputy did not read [Hunn] the implied-consent advisory or seek chemical testing under the implied-consent law," so Hunn's "decision regarding whether to consent to testing never carried a possibility of immediate license-revocation sanctions or criminal prosecution for test refusal." Id. Accordingly, the court held there was no violation of the Minnesota Constitution's right-to-counsel clause. Id. at 546. The case was remanded to the district court for further proceedings, "including a determination of whether [Hunn] voluntarily consented to the deputy's testing request." Id.
We granted Hunn's petition for review in part.[1]
ANALYSIS
I.
The issue before us is whether the limited right to counsel under the Minnesota Constitution that we recognized in Friedman applies when an individual is asked to consent to a chemical test, but the implied-consent advisory is not read. This is a question of constitutional law, which we review de novo. Fedziuk v. Comm'r of Pub. Safety , 696 N.W.2d 340, 344 (Minn. 2005).
A.
Hunn argues that the limited right to counsel recognized in Friedman always applies when an arrested driver is asked to decide whether to submit to chemical testing. Based on the holding of Friedman , we *819 read Hunn's argument as essentially asserting two rights: (1) to be informed that he had the right to consult with an attorney before deciding whether to consent to chemical testing, and (2) to have a reasonable amount of time to contact that attorney before an officer could conclude that he was refusing to consent. We refer to these two rights collectively as the "limited right to counsel." Friedman , 473 N.W.2d at 837. The State argues that our holding in Friedman , and thus, the limited right to counsel, was restricted to situations where the implied-consent advisory is read.
Friedman was decided in 1991, at a time when all three methods of chemical testing-blood, breath, and urine-were covered by the implied-consent statute.[2] See Minn. Stat. § 169.123, subd. 2 (1990). Friedman was arrested for DWI after failing a preliminary breath test. Friedman , 473 N.W.2d at 829. At the station, Friedman asked to speak with an attorney, but her request was denied. Id. Friedman was read the implied-consent advisory, which at the time stated that a defendant "had a right to consult an attorney after testing." Id. (emphasis added). When Friedman told the officer that she did not understand the advisory, the officer took that as a refusal, and Friedman's license was revoked. Id. In holding that Friedman had a limited right to counsel before deciding whether to submit to testing, we stated that "to the extent that Minn. Stat. § 169.123 [the former implied-consent statute] denies access to counsel under these circumstances, we find that it violates Minn. Const. art. I, § 6." Id. at 833-34. This right to counsel was "limited" because "[i]f counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel." Id. at 835 (quoting Prideaux v. State Dep't of Pub. Safety , 310 Minn. 405, 247 N.W.2d 385, 394 (1976) ).
Our holding in Friedman was, as the State argues, that the limited right to counsel extends only to implied-consent cases. After Friedman , we suggested that the limited right to counsel applies only when the implied-consent advisory is actually read. In State v. Melde , we stated that " Friedman held that under the Minnesota Constitution, DWI arrestees have a limited right to a reasonable amount of time in which to attempt to consult with counsel before complying with implied consent testing or refusing to do so ." 725 N.W.2d 99, 104 (Minn. 2006) (emphasis added); see also McDonnell v. Comm'r of Pub. Safety , 473 N.W.2d 848, 853 (Minn. 1991) ("[W]e limit the application of Friedman ... to any case in which the Implied Consent Advisory has been challenged ... and to any case arising after the date of Friedman 's release." (emphasis added) ). We have also stated that the results of a chemical test may be admitted in a criminal prosecution for DWI, even when the implied-consent advisory has not been read. Tyler v. Comm'r of Pub. Safety , 368 N.W.2d 275, 281 (Minn. 1985) ("Here there was no intent to comply, attempt to comply or compliance with the implied consent law. Thus ... the results of the chemical analysis ... could be used in a prosecution of Tyler for DWI, having been legally obtained.... " (emphasis added) ).
The Friedman holding is limited to implied-consent cases because of the unique decision and consequences that *820 come with the reading of the advisory. See 473 N.W.2d at 833 (noting that, following the implied-consent reading, Friedman "was confused about the legal ramifications of her decision," and that "[a]n attorney functions as an objective advisor who could explain the alternative choices"). The legal ramifications of the decision to submit (or not submit) to chemical testing after the advisory reading are significant. Of course, consenting may provide law enforcement with the evidence necessary to secure a conviction. But refusing will automatically result in a mandatory license revocation, and may still result in a criminal DWI conviction. See Minn. Stat. § 169A.25, subd. 1(b) (2016) ; Minn. Stat. § 169A.26, subd. 1(b) (2016) ; Minn. Stat. § 169A.52, subd. 3 (Supp. 2017). As we have recognized, it may not be clear to a driver faced with the advisory whether the consequences for consenting or refusing will be worse. See Prideaux , 247 N.W.2d at 390 ("[D]epending upon the individual driver's circumstances, the decreased possibility of criminal conviction may be worth the 6-month loss of his license if he does not depend on his driver's license for his livelihood."). That unique decision is not present here.
Hunn points to language in Friedman that, when read in isolation, seems to say that any chemical test is a critical stage of a criminal proceeding, thus triggering the limited right to counsel. See 473 N.W.2d at 837 ("We believe that a driver who has been stopped for a possible DWI violation and has been asked to submit to a chemical test is at a 'critical stage' in DWI proceedings, thus triggering the right to counsel."). But because Friedman was an implied-consent case, any broader language in that decision is dictum. See Carlton v. State , 816 N.W.2d 590, 614 (Minn. 2012) (describing a statement as dictum "because the resolution of that question [was] not necessary to our ultimate holding" (alteration in original) (citation omitted) (internal quotation marks omitted) ). In any event, the limited right recognized in Friedman was clarified by Melde and McDonnell . See Melde , 725 N.W.2d at 104 ; McDonnell , 473 N.W.2d at 853.
Accordingly, we hold that the limited right to counsel recognized by Friedman is triggered only when the implied-consent advisory is read.[3] This rule of law does not mean that officers may force an individual to submit to chemical testing. Significantly, the statutes covering breath, blood, and urine tests both provide that, in most situations, if a person refuses testing, the test "must not be given." Minn. Stat. § 169A.52, subd. 1 (2016) ; Minn. Stat. § 171.177, subd. 13(a) (Supp. 2017).[4]
Because the officer did not read the implied-consent advisory here, under Friedman the limited right to counsel was not triggered. It was error for the district court to suppress the urine-test results on *821 that ground.[5]
B.
Having concluded that the limited right to counsel that we recognized in Friedman does not apply here, we do not reach any other issues.
The sole issue on which we granted review was: "Did the Court of Appeals overrule Friedman ... and re-define a criminal defendant['s] right to counsel during chemical testing?" We have answered that question-"No"-and therefore do not consider whether the Minnesota Constitution should otherwise be extended to provide a limited right to counsel. See State v. Myhre , 875 N.W.2d 799, 806 (Minn. 2016) (stating that "we have declined to consider issues that were not raised in the petition for review and not fully developed in the appellant's brief").
Nor need we consider Hunn's alternative argument-that he had a statutory right to counsel under the version of the implied-consent statute that was in effect on the date of his arrest. See Minn. Stat § 169A.51 (2014). That issue is not within Hunn's petition for review, and was not urged before, or considered by, the district court or the court of appeals. Accordingly, the statutory issue has been forfeited. See Myhre , 875 N.W.2d at 806 ("Issues not raised in the court of appeals are usually forfeited here."); In re GlaxoSmithKline PLC , 699 N.W.2d 749, 757 (Minn. 2005) ("Generally, we do not address issues that were not raised in a petition for review.").
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

We granted review on the issue of whether the court of appeals overruled Friedman and re-defined a criminal defendant's right to counsel in the context of chemical testing. We denied review on the issue regarding the scope of Minn. R. Crim. P. 28.04, subd. 2(6), relating to attorney fees on an appeal brought by the State.

Today, only breath tests can be required under the implied-consent statute. See Minn. Stat. § 169A.51, subd. 2 (Supp. 2017).

Hunn argues that this holding would functionally allow law enforcement to control an individual's right to counsel by choosing to read or not read the implied-consent advisory. But the implied-consent statute itself affords officers this discretion, stating that "[t]he test may be required of a person when an officer has probable cause to believe the person was ... in violation of section 169A.20." Minn. Stat. § 169A.51, subd. 1(b) (emphasis added); see also Minn. Stat. § 645.44, subd. 15 (2016) (" 'May' is permissive.").

The statutes permit a test to be required "despite [a] person's refusal" only if the officer has probable cause to believe that the person has violated the criminal vehicular homicide statutes-Minn. Stat. §§ 609.2112 -.2114 (2016) and Minn. Stat. § 609.21 (2012). See Minn. Stat. § 169A.52, subd. 1 ; Minn. Stat. § 171.177, subd. 13(b).

Because the consent issue was raised in, but not addressed by, the district court, we do not reach the issue of whether Hunn provided valid consent to the urine test. That issue must be decided on remand.