McKEIG, Justice.
In 2017, a sheriff's deputy arrested appellant Jennifer Rosenbush for driving while impaired ("DWI") and obtained a search warrant to take a sample of her blood for alcohol concentration testing. When the deputy presented Rosenbush with the search warrant, he read her the newly enacted implied-consent advisory for blood and urine tests. It informs drivers only that "refusal to submit to a blood or urine test is a crime." See Minn. Stat. § 171.177, subd. 1 (2018). Rosenbush allowed her blood to be drawn, and tests showed that she had an alcohol concentration over the legal limit.
The State charged Rosenbush with fourth-degree DWI and Rosenbush moved to have the results of her blood test suppressed. She argued that, under our decision in Friedman v. Commissioner of Public Safety , 473 N.W.2d 828 (Minn. 1991), she had a limited right under the Minnesota Constitution to consult with counsel before deciding whether to submit to a blood test and that police failed to vindicate that right. The district court agreed and suppressed the results of Rosenbush's blood test. The court of appeals reversed. We hold that the limited right to counsel established in Friedman does not apply when an individual is asked to submit to a blood test pursuant to a warrant, and therefore, we affirm the court of appeals.
FACTS
On July 23, 2017, police stopped Rosenbush on suspicion that she had driven into a ditch, hit a road sign, and left the scene of the accident. When questioned by a Dakota County sheriff's deputy, Rosenbush admitted that she had been in the accident. She also smelled mildly of alcohol, was crying, and was slow to respond to questions. The deputy questioned Rosenbush further, and she told him that she had consumed "two to three beers" earlier that day. In addition, when asked how intoxicated she felt on a scale from one to ten, she said four. The deputy asked Rosenbush to step out of her vehicle and perform field sobriety tests, but she refused. Eventually, Rosenbush cooperated with a preliminary breath test, and it showed that her alcohol concentration was over the legal limit.
The deputy arrested Rosenbush for DWI. Instead of taking her to jail, however, an ambulance took Rosenbush to a hospital to be placed on a mental health hold because she told the deputy that she was feeling suicidal. While Rosenbush was *94 being transported to the hospital, the deputy's supervisor obtained a search warrant for a blood sample from Rosenbush. The supervisor faxed the warrant to the hospital, and the deputy gave it to Rosenbush when he arrived. After serving Rosenbush with the warrant, the deputy read her the implied-consent advisory for blood and urine tests required by Minn. Stat. § 171.177, subd. 1. The advisory informs drivers that "refusal to submit to a blood or urine test is a crime." Rosenbush let a nurse draw her blood, and chemical testing showed that her alcohol concentration was over the legal limit.
The State charged Rosenbush with fourth-degree DWI, Minn. Stat. §§ 169A.20, subd. 1(1), 169A.27 (2018).[1] Rosenbush moved to suppress the results of her blood test, arguing that she had a limited constitutional right to consult with counsel before submitting to the test under Friedman v. Commissioner of Public Safety , 473 N.W.2d 828 (Minn. 1991), and that the deputy failed to vindicate that right. The district court agreed and suppressed the results of Rosenbush's blood test.
The State appealed the district court's pretrial suppression order and the court of appeals reversed. The court of appeals reasoned that Rosenbush was not presented with the same "unique choice" as the driver in Friedman because the deputy did not "ask[ ] Rosenbush whether she would agree to take a blood test or [tell] her that no test would be given if she chose not to submit." State v. Rosenbush , No. A18-0377, 2018 WL 3340530, at *4 (Minn. App. July 9, 2018). According to the court of appeals, because the deputy did not give Rosenbush "a choice between alternatives that carried different, significant, legal ramifications," she did not have a limited right to counsel under Friedman . Id.
We granted Rosenbush's petition for review.[2]
ANALYSIS
The issue before us is whether a driver arrested on suspicion of DWI, read an implied-consent advisory, and presented with a search warrant authorizing a search of her blood has the right "to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing" under Article I, Section 6 of the Minnesota Constitution. Friedman v. Comm'r of Pub. Safety , 473 N.W.2d 828, 835 (Minn. 1991). This is a question of constitutional law that we review de novo. State v. Hunn , 911 N.W.2d 816, 818 (Minn. 2018).
Article I, Section 6, of the Minnesota Constitution provides: "In all criminal prosecutions the accused shall ... have *95 the assistance of counsel in his defense." We have held that this right applies at all "critical stages" of a criminal prosecution. Friedman , 473 N.W.2d at 833. A proceeding or event is a critical stage if " 'the accused require[s] aid in coping with legal problems or assistance in meeting his adversary.' " Id. (quoting United States v. Ash , 413 U.S. 300, 313, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) ). In addition, a critical stage "includes 'those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel.' " Id. (quoting Gerstein v. Pugh , 420 U.S. 103, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ).
To analyze Rosenbush's right-to-counsel claim, we must first address our case law that sets out when a request for alcohol concentration testing under the implied-consent law is a "critical stage" of a criminal prosecution under the Minnesota Constitution. We must also address recent changes to the implied-consent law that are relevant to Rosenbush's claim. We begin with an explanation of Minnesota's implied-consent law.
The implied-consent law mandates-as a condition of the privilege to drive in Minnesota-that any person who is in physical control of a motor vehicle within the state "consents ... to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of ... an intoxicating substance." Minn. Stat. § 169A.51, subd. 1(a) (2018). If a person does not honor that condition and refuses to permit chemical testing, the law requires that "a test must not be given." Minn. Stat. §§ 169A.52, subd. 1, 171.177, subd. 13 (2018). But as a consequence of the refusal, the Commissioner of Public Safety must revoke that person's driver's license. Minn. Stat. §§ 169A.52, subd. 3, 171.177, subd. 4 (2018). License revocation is only available if police read a driver the implied-consent advisory when requesting a test. Minn. Stat. §§ 169A.51, subd. 2, 171.177, subd. 1 (2018) ; see also Tyler v. Comm'r of Pub. Safety , 368 N.W.2d 275, 280 (Minn. 1985) ("Compliance with the procedures of the implied consent law is a prerequisite to revocation pursuant to the implied consent law."). This advisory briefly explains some of the consequences of refusal. See Minn. Stat. §§ 169A.51, subd. 2, 171.177, subd. 1.
In Friedman v. Commissioner of Public Safety , we addressed whether suspected impaired drivers had a right to counsel under the Minnesota Constitution when deciding whether to submit to implied-consent testing. 473 N.W.2d at 833-37. In that case, Friedman was arrested for DWI. Id. at 829. Police took Friedman to the police station for a breath test, and while they waited for the breath-testing machine to become available, "Friedman asked what her rights were and whether she could consult an attorney." Id. Her request to speak with an attorney was denied, and an officer read her the implied-consent advisory in effect at the time. Id. Friedman told the officer that she did not understand the advisory, and the officer deemed her response to be a refusal. Id. Friedman's license was revoked for 1 year under the implied-consent statute. Id.
We reversed Friedman's license revocation and held that "a driver who has been stopped for a possible DWI violation and has been asked to submit to a chemical test" under the implied-consent law "is at a 'critical stage' in DWI proceedings, thus triggering the right to counsel" under the Minnesota Constitution. Id. at 833.[3] To *96 reach this conclusion, we discussed the unique situation created by the implied-consent statute, id. at 832, and our concern that drivers in this situation needed "aid in coping with legal problems or assistance in meeting [their] adversary," id. at 833 (citation omitted) (internal quotation marks omitted). In particular, we noted the "critical and binding decision" a driver must make in deciding whether to consent to chemical testing, and a driver's need for an "objective advisor" to explain the different legal consequences implicated by that decision. Id. at 832-33. Under the advisory in effect at the time, Friedman "was confused about the legal ramifications of her decision" and "looked to the police for guidance." Id. at 833. But an "attorney, not a police officer, is the appropriate source of legal advice." Id. Emphasizing "Minnesota's lengthy and historic recognition of human rights, human dignity, and the procedural protection for the rights of the criminally accused," id. at 836, we held that "the Minnesota Constitution protects the individual's right to consult counsel when confronted with" a request for chemical testing under the implied-consent law, id. at 833.[4]
Friedman did not, however, provide a limited right to counsel to all suspected impaired drivers who were asked to submit to chemical testing. Instead, "the limited right to counsel recognized by Friedman is triggered only when the implied-consent advisory is read." State v. Hunn , 911 N.W.2d 816, 820 (Minn. 2018). We reaffirmed in Hunn that the driving force behind Friedman was the "unique decision" drivers must make when the police request alcohol concentration tests under the implied-consent law. Id. at 819-20.
When Friedman was decided, the implied-consent law used the same procedure for breath, blood, and urine tests. See Minn. Stat. § 169.123, subd. 2 (1990). But in 2017, the Legislature amended the implied-consent statutes after several judicial decisions limited the ability of police to obtain warrantless blood and urine samples from suspected impaired drivers.[5] Act of May 23, 2017, ch. 83, art. 2, §§ 3-10, 2017 Minn. Laws 351, 355-66 (codified at *97 Minn. Stat. §§ 169A.51, .53-.54, .60, 171.177 (2018)). These statutory changes apply to Rosenbush. Id. (stating that these sections are effective July 1, 2017, and apply to acts committed on or after that date).
Under the new law, the procedures for obtaining breath tests and administratively revoking a driver's license based on the failure or refusal of a breath test remain substantively untouched and are codified in the same statutes. See Minn. Stat. §§ 169A.51 - 169A.53 (2018). For blood and urine tests, however, the implied-consent law now requires that such tests "be conducted only pursuant to a search warrant ... or a judicially recognized exception to the search warrant requirement." Minn. Stat. § 169A.51, subd. 3. In addition, blood and urine tests must now be conducted under the procedures set out in Minn. Stat. § 171.177. See Minn. Stat. § 169A.51, subd. 3(a) (stating that blood and urine tests must be conducted according to § 171.177 ).
The noteworthy differences between the new statutory provisions for blood and urine tests and the previous implied-consent law are the warrant requirement and a new fluid-test advisory. The advisory for breath tests remains the same in all relevant aspects, and continues to require that police inform drivers of the limited right to counsel announced in Friedman . Minn. Stat. § 169A.51, subd. 2.[6] The new advisory for blood and urine tests, on the other hand, only requires police to inform drivers "that refusal to submit to a blood or urine test is a crime." Minn. Stat. § 171.177, subd. 1.
Rosenbush argues that the consequences of her decision to submit to a blood test under the new statute are identical to those that the driver in Friedman faced, regardless of the presence of a warrant. According to Rosenbush, the deputy invoked the implied-consent statute by reading the applicable advisory just as the officer in Friedman did. Therefore, Rosenbush asserts, just like the driver in Friedman , she had two options: submit to a chemical test and give the police potentially incriminating evidence, or refuse and have her license automatically revoked. Rosenbush argues that, faced with the same choice, she should have the same limited right to counsel as the driver in Friedman .[7] The State, on the other hand, argues that the presence of a warrant fundamentally changes Rosenbush's encounter from the one at issue in Friedman . We agree with the State.
Even though Rosenbush did have the choice to refuse testing or comply with the warrant,[8] this choice is not enough to *98 justify an extension of Friedman to warranted searches. Like Rosenbush, every person who is the subject of a search warrant has a choice to make: comply with the warrant or be subject to criminal penalties. See Minn. Stat. § 609.50, subd. 1(1) (2018) (making it a crime to obstruct, hinder, or prevent a police officer from lawfully executing any legal process). Deciding whether to comply with a warrant, therefore, is not a "unique decision." Hunn , 911 N.W.2d at 819-20. Instead, the presence of a warrant makes Rosenbush's encounter like any other situation where a search is conducted pursuant to a warrant. And we have never held that the Minnesota Constitution provides the subject of a search warrant with the right to consult counsel before a warrant can be executed. Accordingly, Rosenbush's statutory right to refuse the blood test does not compel us to extend the limited right to counsel recognized in Friedman .
Further, the existence of a search warrant eliminates many of the concerns that led us to expand the right to counsel in Friedman . The Fourth Amendment protects "personal privacy and dignity against unwarranted intrusion by the state," by generally requiring that police obtain a search warrant before searching a person or place. Schmerber v. California , 384 U.S. 757, 767, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). And the presence of a search warrant ensures that drivers are not faced with the unchecked "legal power of the state," Friedman , 473 N.W.2d at 834 (citation omitted) (internal quotation marks omitted), because "a neutral and detached magistrate" has been interposed, Riley v. California , 573 U.S. 373, 382, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (citation omitted) (internal quotation marks omitted). Therefore, when a suspected impaired driver is presented with a search warrant for a blood or urine test, the driver is not " 'meeting his adversary' " in the same manner as the driver in Friedman because a neutral judicial officer has determined that the police may lawfully obtain a sample of the driver's blood. 473 N.W.2d at 833 (quoting Ash , 413 U.S. at 313, 93 S.Ct. 2568 ).[9]
Moreover, changes to the Minnesota Impaired Driving Code have made a driver's choice less meaningful. At the time Friedman was arrested, the consequence for test refusal was immediate license revocation-a civil penalty.[10] See Minn. Stat. § 169.123, subd. 4 (1988). Now, test refusal is a crime in its own right and it carries a similar penalty to a DWI conviction. See Minn. Stat. § 169A.26 (2018) (making refusal *99 to submit to a chemical test a gross misdemeanor if no aggravating factors are present); Minn. Stat. § 169A.27 (2018) (making driving while impaired a misdemeanor if no aggravating factors are present). The similarity of these penalties under the current law further cuts against the utility of counsel in this situation where little explanation of "the alternative choices" and "legal ramifications" is necessary.[11] Friedman , 473 N.W.2d at 833.
In sum, the presence of a warrant ameliorates the concerns that we articulated in Friedman . We are confident that conducting a search pursuant to a lawful warrant adequately safeguards the "human rights [and] human dignity" about which we were concerned in Friedman and supplies meaningful "procedural protection for the rights of the criminally accused." Id. at 836. Thus, we see no reason to extend the limited right to counsel announced in Friedman to the execution of a search warrant for a suspected impaired driver's blood.
We hold that the limited right to counsel under the Minnesota Constitution recognized in Friedman does not apply when a driver is presented with the choice to submit-or not to submit-to a blood test pursuant to a search warrant. Accordingly, the district court erred in suppressing the blood-test results on that ground.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Dissenting, Hudson, Chutich, Thissen, JJ.
DISSENT

The State also charged Rosenbush for leaving the scene of the accident under Minn. Stat. § 169.09, subd. 2 (2018), and the Commissioner of Public Safety revoked her driver's license under Minn. Stat. § 171.177, subd. 5 (2018). The additional charge and license suspension are not at issue in this appeal.

This case involves a pretrial appeal by the State of a district court's suppression order. See Minn. R. Crim. P. 28.04, subd. 2. To file such an appeal, the district court's pretrial order must have "a critical impact on the State's case." State v. Stavish , 868 N.W.2d 670, 674 (Minn. 2015). The exclusion of evidence has a critical impact on the State's case if that evidence "significantly reduces the likelihood of a successful prosecution." Id. (citation omitted) (internal quotation marks omitted). An essential element of the fourth-degree DWI charge is that Rosenbush was under the influence of alcohol. See Minn. Stat. § 169A.20, subd. 1(1). Because a chemical test showing Rosenbush's alcohol concentration is highly probative of whether she was under the influence of alcohol, the State has established critical impact.

In doing so, we interpreted the right to counsel under the Minnesota Constitution more broadly than the Sixth Amendment right to counsel in the United States Constitution. See United States v. Gouveia , 467 U.S. 180, 187-89, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (holding that the Sixth Amendment right to counsel does not attach until the commencement of adversary judicial proceedings); Nyflot v. Comm'r of Pub. Safety , 369 N.W.2d 512, 515-16 (Minn. 1985) (determining that there is no right to counsel in this context under the Sixth Amendment).

The right to counsel announced in Friedman has been coined a "limited" right to counsel because the exercise of this right cannot " 'unreasonably delay the administration of the test.' " 473 N.W.2d at 835 (quoting Prideaux v. State , 310 Minn. 405, 247 N.W.2d 385, 394 (1976) ). Given the evanescent nature of alcohol in the blood stream, we held in Friedman that a driver's right to counsel " 'will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel.' " Id. (quoting Prideaux , 247 N.W.2d at 394 ).

See Birchfield v. North Dakota , --- U.S. ----, 136 S. Ct. 2160, 2184-85, 195 L.Ed.2d 560 (2016) (holding that warrantless breath testing of suspected impaired drivers was categorically permissible under the search-incident-to-arrest exception to the warrant requirement, but that blood testing was not); Missouri v. McNeely, 569 U.S. 141, 156, 165, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (holding that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant," and that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances"); State v. Thompson , 886 N.W.2d 224, 233 (Minn. 2016) (holding that warrantless urine tests are not permissible searches incident to arrest of suspected impaired drivers), cert. denied , --- U.S. ----, 137 S. Ct. 1338, 197 L.Ed.2d 520 (2017).

Specifically, the breath-test advisory requires that "[a]t the time a breath test is requested" an officer must inform the person: "(1) that Minnesota law requires the person to take a test ...; (2) that refusal to submit to a breath test is a crime; and (3) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test." Minn. Stat. § 169A.51, subd. 2.

In the alternative, Rosenbush argues that the new advisory for blood and urine tests is unconstitutional on due process grounds because "it provides only a single crumb of information regarding a driver's rights and obligations." But Rosenbush raised this argument for the first time in her petition for review. Accordingly, it is not properly before us. See, e.g. , Dykes v. Sukup Mfg. Co. , 781 N.W.2d 578, 584 n.2 (Minn. 2010) ("Generally, issues not presented to the trial court may not be raised for the first time on appeal."); State v. Engholm , 290 N.W.2d 780, 784 (Minn. 1980) ("The law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal.").

Although police are generally permitted to use reasonable force in executing a search warrant, see Minn. Stat. § 609.06, subd. 1(1) (2018), the Legislature has explicitly instructed that a chemical test "must not be given" if a driver suspected of DWI refuses. Minn. Stat. §§ 169A.52, subd. 1, 171.177, subd. 13. Contrary to the State's assertion, this provision gives drivers a choice in whether they will comply with a warrant. And contrary to the court of appeals' conclusion, this choice exists regardless of the information included in the advisory or given to suspects by the police.

To be clear, however, the presence of a warrant does not guarantee the constitutionality of a search. A driver faced with a warrant still has the opportunity to challenge that warrant's probable cause before trial. See State ex rel. Rasmussen v. Tahash , 272 Minn. 539, 141 N.W.2d 3, 13 (1965) (explaining the procedure for challenging the admissibility of evidence obtained as a result of search and seizure); see also State v. Yarbrough , 841 N.W.2d 619, 622-23 (Minn. 2014) (explaining that "a valid warrant must be supported by probable cause" and the standard courts use to review a warrant's validity). And the search conducted pursuant to the warrant must be reasonable. Schmerber , 384 U.S. at 771-72, 86 S.Ct. 1826.

Drivers also faced the possibility that they would be convicted of driving while impaired if the State had enough evidence to sustain a conviction without a chemical test. See Minn. Stat. § 169.121, subd. 1(a) (1988).

The dissent argues that the criminal penalties for refusal and failure are still significantly different. But this is not always true. For example, second-time test refusal and second-time test failure (with no additional aggravating circumstances) are both gross misdemeanors subject to the same 1-year maximum jail sentence. See Minn. Stat. §§ 169A.25 -.26 (2018). Further, these penalties represent the maximum-not the presumptive-jail sentence. Accordingly, the differences between the criminal penalties for refusal and failure are not as stark as the dissent claims.