ROSS, Judge
A Pipestone County patrol sergeant obtained a search warrant to draw and test Pauline Jensen's blood after she drove into and injured a child with her car and failed field sobriety tests. The blood test showed that Jensen's alcohol concentration exceeded the statutory limit, and the commissioner of public safety revoked her license under Minnesota Statutes, section 171.177, subdivision 5. Jensen petitioned for judicial review, arguing that her license could not be revoked because the sergeant had not given her the statutory warning that refusing to submit to the test is a crime. The district court upheld the revocation. Because the statute requires police to issue the warning as a prerequisite to a prehearing license revocation, we reverse and remand for the district court to rescind the revocation.
FACTS
One night in December 2017, Pipestone County patrol sergeant Paul Mathews responded to a call reporting that a child had been struck by a car at a gas station in Ruthton. Sergeant Mathews arrived to find first responders treating a teenage boy whose face and body were bleeding from abrasions and who was having difficulty breathing.
A witness told Sergeant Mathews that Pauline Jensen had run over the boy with her car. Jensen had left the scene. Sergeant Mathews found Jensen's car in front *846 of the Sunset Bar and Grill and found her inside. He noticed that Jensen had bloodshot and watery eyes, stared blankly into the distance when he spoke to her, smelled of alcoholic beverages, and had unstable balance. Sergeant Mathews arrested Jensen on suspicion of drunk driving, second-degree assault, and criminal vehicular operation, and he took her to the Pipestone County Jail. There he administered field sobriety tests, which she failed, and a preliminary breath test, which registered an alcohol concentration of 0.17. The sergeant obtained a search warrant to draw and test Jensen's blood. He served Jensen with a copy of the warrant and took her to the Pipestone County Medical Center, where a medical technician drew the blood sample. The Bureau of Criminal Apprehension analyzed the sample and reported an alcohol concentration over the 0.08 statutory limit. The Commissioner of Public Safety revoked Jensen's license based on the test results.
Jensen petitioned for judicial review, arguing that her driver's license should be reinstated because the sergeant had not warned her that test refusal is a crime, as required by Minnesota Statutes, section 171.177, subdivision 1 (2018), and because the sergeant also never gave her the opportunity to speak with counsel. The district court denied Jensen's petition, reasoning that, because the warrant indicated that there was probable cause to believe that Jensen committed criminal vehicular operation causing bodily harm under Minnesota Statutes, section 609.2113, subdivision 2 (2016), she had no option to refuse the test and failure to give the required warning was therefore irrelevant.
Jensen appeals.
ISSUE
Did the district court err by denying Jensen's petition to reinstate her driver's license based on the deputy's failure to warn her that test refusal is a crime?
ANALYSIS
Jensen argues that the district court erred by failing to reinstate her license because Sergeant Mathews never warned her that refusing to submit to a blood test is a crime. Because the facts are not in dispute, we review the district court's decision de novo. Thole v. Comm'r of Pub. Safety , 831 N.W.2d 17, 19 (Minn. App. 2013), review denied (Minn. July 16, 2013).
Jensen maintains that the warning required by statute is a prerequisite to a prehearing revocation under section 171.177. The statute requires that, "[a]t the time a blood or urine test is directed pursuant to a search warrant ..., the person must be informed that refusal to submit to a blood or urine test is a crime." Minn. Stat. § 171.177, subd. 1. We recently concluded that the warning requirement is unambiguous, has no exceptions, and requires an officer to inform an individual of the criminal consequences of test refusal even when a warrant authorizes the blood draw. State v. Mike , 919 N.W.2d 103, 110 (Minn. App. 2018), review granted (Minn. Nov. 13, 2018). The commissioner does not dispute Jensen's assertion that Sergeant Mathews failed to give Jensen the warning. The question becomes, what effect, if any, does the sergeant's failure to warn have on Jensen's license revocation?
The legislature included the provision to replace the implied-consent statutes covering blood and urine tests after the Minnesota Supreme Court and the United States Supreme Court held that testing of a person's blood or urine without a warrant is unconstitutional. See 2017 Minn. Laws ch. 83, art. 2, § 4, at 356 (requiring search warrant for blood and urine tests ); § 10, at 360-66 (creating section 171.177 );
*847 State v. Thompson , 886 N.W.2d 224, 227-33 (Minn. 2016) (citing Birchfield v. North Dakota , --- U.S. ----, 136 S. Ct. 2160, 2185, 195 L.Ed.2d 560 (2016) ). The procedures in section 171.177 largely mirror those stated in the implied-consent statutes, requiring a warning of criminal consequences at the time a test is directed or requested. Compare Minn. Stat. § 171.177, subd. 1, with Minn. Stat. § 169A.51, subd. 2 (2018). The statutes also detail the same procedure for review of a revocation. Compare Minn. Stat. § 171.177, subds. 10-12 (2012), with Minn. Stat. § 169A.53 (2018). The history of section 171.177 and its obvious relationship to the implied-consent statutes leads us to apply to section 171.177 the caselaw relied on to interpret the related implied-consent statutes.
The supreme court's decision in Tyler v. Commissioner of Public Safety is most instructive. 368 N.W.2d 275, 280-81 (Minn. 1985). Tyler compels us to hold that the deputy's failure to provide the statutorily required warning precluded the district court from upholding Jensen's revocation. Id. The Tyler court held that complying with the warning requirement was necessary before revoking a license under the implied-consent law: "[W]e believe that the legislature intended that a driver's license be revoked pursuant to the implied consent law ... only if the provisions of the law were complied with." Id. at 281 (emphasis added). And a license revocation cannot be sustained if the refusal-is-a-crime warning was not given. Id. Following this reasoning, we hold that a license can be revoked under section 171.177 only if the officer followed the warning requirement.
The commissioner argues that the deputy's failure to warn Jensen is irrelevant to revocation because Jensen's blood could be drawn even if she refused to be tested, citing Minnesota Statutes, section 171.177, subdivision 13(b) (2018). That subdivision authorizes an officer to test a person's blood notwithstanding her refusal if the officer has probable cause to believe that she committed criminal vehicular operation causing bodily harm under section 609.2113. The commissioner reads too much into this authorization. It is true that, if Jensen had refused to submit to the test, the sergeant could have drawn and tested her blood anyway. But an officer's authority to obtain a test despite the driver's refusal does not eliminate his duty to give the warning "at the time a blood or urine test is directed." Minn. Stat. § 171.177, subd. 1. Nor does the authority render the warning irrelevant. As we have explained, the purpose of the warning is "to inform a driver of the serious consequences of refusal in an effort to compel the driver to take the test," not to inform the driver that she has the option to refuse. Mike , 919 N.W.2d at 113. And a driver can commit the crime of test refusal even if she is ultimately forced to submit to a test. See Minn. Stat. §§ 169A.20, subd. 2(2), 171.177, subd. 13(a)-(b) (2018). Because refusing a test carries the same criminal consequences whether or not the state can force a test, and because the purpose of the warning is to inform drivers of the criminal consequences of refusal, the warning serves its purpose and is not irrelevant in these circumstances. The refusal-is-a-crime warning is required before the commissioner may secure a prehearing license revocation.
This is not to say that the commissioner cannot revoke Jensen's license using other available procedures. For example, the commissioner is required to revoke Jensen's license before a conviction if she is formally charged with criminal vehicular operation causing bodily harm. See Minn. Stat. § 171.187, subd. 1(2) (2018). And revocation will result if the state obtains her conviction for criminal vehicular operation *848 causing bodily harm. See Minn. Stat. § 171.17, subd. 1(a)(1) (2018). The commissioner can also revoke Jensen's license if she is convicted of driving while impaired. See id. , subd. 1(a)(2) (2018). Our decision addresses only the prehearing revocation based on the procedures outlined in section 171.177.
Jensen also argues that the district court erroneously upheld the revocation because she was not given an opportunity to speak with counsel before taking the blood test. But the supreme court recently held that a driver has no right to consult an attorney before deciding whether to submit to a blood test authorized by a search warrant. State v. Rosenbush , 931 N.W.2d 91, 99 (Minn. 2019). Jensen's second, alternative argument therefore fails.
DECISION
An officer must have warned a driver as required in Minnesota Statutes, section 171.177, subdivision 1, before the commissioner of public safety may revoke her license before a hearing under subdivision 5. The sergeant's failure to warn Jensen before drawing and testing her blood prevents the commissioner from revoking the license without a hearing. We reverse and remand for the district court to rescind Jensen's prehearing license revocation.
Reversed and remanded.