# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0902

State of Minnesota,
Respondent,

vs.

Samuel Alejondro Torrez,
Appellant.

**Filed June 10, 2024**
**Affirmed in part, reversed in part, and remanded**
**Wheelock, Judge**

Polk County District Court
File No. 60-CR-20-1181

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, First Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schmidt, Presiding Judge; Slieter, Judge; and Wheelock, Judge.

## SYLLABUS

At a trial for refusal to submit to chemical testing pursuant to Minn. Stat. § 169A.20, subd. 2(2) (2018), the state does not have to prove beyond a reasonable doubt that law enforcement had probable cause to believe the defendant was driving while impaired if there was a valid search warrant for a blood or urine test supported by probable cause.

**OPINION**

**WHEELOCK**, Judge

Appellant challenges his conviction for first-degree refusal to submit to chemical testing under Minn. Stat. § 169A.20, subd. 2(2), arguing that the district court abused its discretion by not submitting the issue of probable cause to the jury and that the district court's modification of the model jury instruction materially misstated the law and eliminated his defense strategy. We affirm in part. We also reverse in part appellant's 365-day gross-misdemeanor sentence and remand for resentencing consistent with Minn. Stat. § 609.0342 (Supp. 2023).

**FACTS**

In July 2020, the Polk County Sheriff's Department received a report that a car was driving "all over the road"; the caller provided a description of the car and license plate. An officer found a car matching the caller's description and initiated a traffic stop. The officer approached the car and observed that appellant Samuel Alejondro Torrez was sweating profusely, twitching and jerking, not wearing a shirt, and unable to track the conversation. The officer did not personally see Torrez driving erratically and did not recognize Torrez. A second officer arrived, observed the same conduct as the first officer, and noticed additionally that Torrez's pupils were dilated and that Torrez was grinding his teeth. Both officers determined that these observations indicated Torrez may be under the influence of a controlled substance. The second officer conducted field sobriety tests. Based on their observations and testing, the officers placed Torrez under arrest for suspected driving under the influence of a controlled substance.

One of the officers applied for a search warrant for a blood or urine sample. A judge issued the search warrant, finding that probable cause existed for a blood or urine test. The officer presented Torrez with the warrant, explained the warrant, and provided the required test-refusal advisory. Torrez repeatedly refused to provide a blood or urine sample as the warrant required. Respondent State of Minnesota charged Torrez with first-degree refusal to submit to chemical testing under Minn. Stat. § 169A.20, subd. 2(2), and driving after cancellation of his license under Minn. Stat. § 171.24, subd. 5 (2018).

Torrez moved to suppress the evidence against him, but the district court denied his motion. The district court determined that the officers had probable cause to arrest Torrez for suspected driving while impaired (DWI) at the time they first approached Torrez and observed indicia of impairment. In addition, the district court determined that the officers had probable cause to arrest Torrez for suspected DWI based on his performance on the field sobriety tests.

During a pretrial hearing, Torrez objected to the state's jury instruction that omitted the issue of probable cause, arguing that the jury needed to find "whether there's probable cause to believe that he was impaired." The district court adopted the state's proposed jury instructions and did not submit the issue of probable cause to the jury, reasoning that the model jury instruction was incorrect after reviewing the statute.[1] The district court further

---

[1] The relevant portion of the model jury instruction—the part omitted from the instruction provided to the jury—states:

> First, a peace officer had probable cause to believe that the defendant drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol. In order to

3

reasoned that the issue of probable cause did not need to be submitted to the jury because neither the warrant nor the stop was at issue in the trial. The district court did not change its decision upon Torrez's request for reconsideration.

The jury found Torrez guilty of both charges. The district court convicted Torrez and, in March 2023, sentenced him to 72 months in prison for first-degree refusal to submit to chemical testing and to a concurrent sentence of 365 days for driving after cancellation of his license.

Torrez appeals.

**ISSUES**

I.    Did the district court abuse its discretion when it determined that the jury did not need to decide whether the officers had probable cause to believe Torrez was driving under the influence of a controlled substance for purposes of determining whether Torrez refused to submit to chemical testing in violation of Minn. Stat. § 169A.20, subd. 2(2)?

II.    Does Torrez's sentence need to be corrected pursuant to newly enacted legislation?

---

find that the officer had "probable cause," you must first look at the totality of the circumstances leading to the arrest, based upon the objective facts and circumstances testified to by the arresting officer, as well as the officer's training and experience. If you find those circumstances would lead a reasonable officer to have an honest and strong suspicion that the defendant was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol, then the arresting officer had probable cause.

10A *Minnesota Practice*, CRIMJIG 29.22 (Supp. 2021).

4

## ANALYSIS

**I.    The district court did not abuse its discretion by deciding that the jury did not need to determine whether the officers had probable cause.**

Torrez argues that the district court abused its discretion when it denied his request to instruct the jury to decide whether officers had probable cause to believe that Torrez was driving while impaired, and that the appropriate remedy is a new trial. Torrez asserts that, because Minn. Stat. § 169A.51, subd. 1(b)(1) (2018), requires an officer to have probable cause before placing a person under arrest for DWI, the district court materially misstated the law regarding the elements of Minn. Stat. § 169A.20, subd. 2(2), when it issued a jury instruction that did not include language submitting the issue of probable cause to the jury. Torrez argues that the removal of this issue from the jury eliminated his defense strategy at trial. The state asserts that the jury did not need to decide the issue because the district court had already found probable cause when it issued the search warrant and because a separate finding of probable cause is required only for a breath test under Minn. Stat. § 169A.20, subd. 2(1) (2018), and not for a blood or urine test under Minn. Stat. § 169A.20, subd. 2(2).

"We review a district court's jury instructions for an abuse of discretion. A district court abuses its discretion if it fails to properly instruct the jury on all elements of the offense charged." *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019) (citation and quotation omitted). "A properly objected-to instructional error regarding an element of an offense requires a new trial only if it cannot be said beyond a reasonable doubt that the error had

5

no significant impact on the verdict." *State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2011) (quotations omitted).

The district court did not submit the issue of probable cause to the jury, and thus, it did not provide the model jury instruction on test refusal. The district court made this decision after reviewing other district court decisions and Minn. Stat. § 169A.20 (2018). The district court also reasoned that, under *State v. Rosenbush*, 931 N.W.2d 91 (Minn. 2019), "challenges to the stop and challenges to the search warrant are all issues that should be decided by a judge prior to a trial[, s]o . . . the judge determines probable cause about the warrant before trial."

We agree with the district court's conclusion that, because the district court had already found that probable cause supported the issuance of the search warrant, it did not abuse its discretion when it decided not to submit the issue of probable cause to the jury. "Where there is a conflict between the Minnesota Jury Instructions Guide, Criminal (CRIMJIG) and the statute or our case law, the latter two control." *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015); *see State v. Pierce*, 792 N.W.2d 83, 86 (Minn. App. 2010) (stating that jury instructions "are not the law"). The statute under which the state charged Torrez does not require an additional finding of probable cause beyond that required to support the search warrant.

The statute provides:

> It is a crime for any person to refuse to submit to a chemical test:
> (1) of the person's breath under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license); or

6

(2) of the person's blood or urine as required by a search
warrant under sections 171.177 and 626.04 to 626.18.

Minn. Stat. § 169A.20, subd. 2. This court recently explained the difference between clauses (1) and (2) of this subdivision in a nonprecedential opinion[2] that squarely addresses Torrez's argument. In *State v. Lewison*, we concluded that "[b]ecause a search warrant requires a finding of probable cause by a judge to support its issuance, the warrant requirement of the clause-(2) offense reasonably takes the place of the probable-cause element." No. A22-1807, 2023 WL 8537376, at *3 (Minn. App. Dec. 11, 2023), *rev. denied* (Minn. Feb. 28, 2024). We explained that "the United States Supreme Court held that the Fourth Amendment does not permit warrantless blood tests incident to an arrest for drunk driving. In response, the Minnesota Legislature amended the test-refusal statute to include clause (2), which incorporates the warrant requirement outlined in *Birchfield*." *Id.* at *3 n.1 (first citing *Birchfield v. North Dakota*, 579 U.S. 438, 474-75 (2016); and then 2017 Minn. Laws ch. 83, art. 2, § 2, at 351, 355 (codified at Minn. Stat. § 169A.20, subd. 2 (Supp. 2017))). The Minnesota Supreme Court also briefly addressed this 2017 statutory change in *Rosenbush*, stating that, "[f]or blood and urine tests, . . . the implied-consent law now requires that such tests 'be conducted only pursuant to a search warrant . . . or a judicially recognized exception to the search warrant requirement.'" 931 N.W.2d at 97 (quoting Minn. Stat. § 169A.51, subd. 3 (2018)).

---

[2] Nonprecedential opinions may be cited as persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1(c).

We take this opportunity to dispel confusion once and for all and hold that, at a trial for refusal to submit to chemical testing pursuant to Minn. Stat. § 169A.20, subd. 2(2), the state does not have to prove beyond a reasonable doubt that law enforcement had probable cause to believe the defendant was driving while impaired if there was a valid search warrant for a blood or urine test supported by probable cause. Having clarified the law, we next address each of Torrez's arguments.

First, Torrez argues that removing the issue of probable cause from the jury renders meaningless subdivision 3 of Minn. Stat. § 169A.51 (2018), a statute that governs chemical tests for impairment and that, Torrez maintains, applies here—notwithstanding the fact that the section is not referenced in the charging statute. We are not persuaded because there is a material difference in how subdivisions 2(2) and 2(1) of section 169A.20 relate to section 169A.51. Subdivision 2(1) criminalizes an individual's refusal to submit to a *breath* test, for which a search warrant is not required, and it expressly references section 169A.51.[3] But Torrez was not charged under subdivision 2(1). Instead, the state charged

---

[3] We note that, in *State v. Ouellette*, this court held that it was error for the district court to fail to instruct the jury on the element of probable cause in a prosecution for the defendant's refusal to submit to a urine test. 740 N.W.2d 355, 358 (Minn. App. 2007), *rev. denied* (Minn. Dec. 19, 2007). We reached that conclusion because, at the time of Ouellette's offense, the test-refusal statute criminalized refusing "a chemical test of the person's blood, breath, or urine under section 169A.51." *Id.* (quoting Minn. Stat. § 169A.20, subd. 2 (2006)). Accordingly, we held that the state must prove beyond a reasonable doubt at trial that the defendant was lawfully arrested for DWI as Minn. Stat. § 169A.51 (2006) required. *Id.* at 360. While the holding in *Ouellette* remains applicable to breath-test refusals, it no longer applies to blood- or urine-test refusals pursuant to Minn. Stat. § 169A.20, subd. 2(2) (2018), as a result of the 2017 legislative changes that removed reference to Minn. Stat. § 169A.51 (2018) from the added subdivision 2(2) and replaced it with the warrant requirements of Minn. Stat. §§ 171.177, 626.04-.18 (2018) for blood and urine tests. *See* 2017 Minn. Laws ch. 83, art. 2, § 2, at 351, 355.

8

Torrez under section 169A.20, subdivision 2(2), which requires that an officer obtain a search warrant pursuant to chapter 626[4] and execute the warrant pursuant to section 171.177 and which contains no reference to section 169A.51. Subdivision 2(2) criminalizes refusal to comply with the warrant. Minn. Stat. § 169A.20, subd. 2(2). Nevertheless, Torrez argues that, because section 169A.51, subdivision 3, mentions the warrant requirement for a blood or urine test, we should read it when interpreting section 169A.20, subdivision 2(2). We disagree because section 169A.51 falls within the statutes that provide for license revocation as a result of test refusal, Minn. Stat. §§ 169A.51-.55 (2018), and license revocation is not at issue here. We therefore conclude that we do not need to review or interpret sections 169A.51 to 169A.55 to apply section 169A.20, subdivision 2(2), in this case.

Second, Torrez argues that the district court erred by relying on *Rosenbush* for two reasons: first, because the district court improperly used the case to prevent Torrez from challenging probable cause at trial, and second, because *Rosenbush* did not involve a challenge to jury instructions and is therefore inapposite. We conclude that *Rosenbush* is relevant, however, because it analyzes the very same statute pursuant to which the state charged Torrez, even though it did not involve allegations of erroneous jury instructions. 931 N.W.2d at 94. In addition, we do not agree with Torrez's suggestion that the district court relied on *Rosenbush* as providing a bright-line rule for when a party may challenge the finding of probable cause. Rather, we read the footnote in *Rosenbush* to imply that the

---

[4] Section 626.08 requires that the warrant be supported by probable cause.

9

challenge should be made prior to trial: "A driver faced with a warrant still has the opportunity to challenge that warrant's probable cause before trial." *Id.* at 98 n.9. Thus, even if the district court read a bright-line rule into *Rosenbush*, the district court did not prohibit Torrez from challenging probable cause; indeed, Torrez raised, and the district court considered, arguments challenging probable cause in Torrez's motion to suppress evidence and when debating jury instructions. We do not discern any error in the district court's reliance on *Rosenbush*.

**II.     Torrez's 365-day gross-misdemeanor sentence is unlawful under Minn. Stat. § 609.0342 and must be corrected.**

The state charged Torrez with driving after cancellation of his license pursuant to Minn. Stat. § 171.24, subd. 5, a gross misdemeanor. The district court entered the conviction and sentenced Torrez in March 2023 to serve 365 days for this offense. Although Torrez does not challenge this sentence, "it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights [or] . . . failure to specify issues." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (quotation omitted). In light of that responsibility, we consider sua sponte the validity of Torrez's sentence.

Minnesota Statutes section 609.0342(a) provides that "[a]ny law of this state that . . . is defined as a gross misdemeanor shall be deemed to provide for . . . a maximum sentence of imprisonment of 364 days." This provision applies retroactively to "[a]ny sentence of imprisonment for one year or 365 days imposed or executed before July 1, 2023." Minn. Stat. § 609.0342(b). The district court imposed a gross-misdemeanor

sentence of 365 days in March 2023. Pursuant to this statute, Torrez's gross-misdemeanor sentence should therefore be 364 days. Because a sentence unauthorized by law may be corrected "at any time," Minn. R. Crim. P. 27.03, subd. 9, we reverse the 365-day sentence and remand for the district court to resentence Torrez consistent with section 609.0342.

## DECISION

In Minnesota, it is a crime for a person to refuse to submit to a chemical test of their blood or urine as required by a valid search warrant. Minn. Stat. § 169A.20, subd. 2(2). By statute and consistent with caselaw, the probable cause required for a valid search warrant establishes the probable cause required under section 169A.20, subdivision 2(2). Therefore, the state did not need to prove probable cause a second time, it was unnecessary for the jury to find probable cause as an element of the offense, and the district court did not abuse its discretion when it denied Torrez's request to provide the model jury instruction that included a finding of probable cause. Thus, there are no grounds for a new trial. We reverse and remand for correction of Torrez's driving-after-cancellation sentence consistent with Minn. Stat. § 609.0342.

**Affirmed in part, reversed in part, and remanded.**